THE BUTTERICK PUBLISHING COMPANY, Appellant, *v.* FREDERICK LOESER & CO., INC., Respondent.

Injunction — action to restrain defendant from selling goods made by competitor of plaintiff in violation of alleged contract between the parties — provisions of agreement examined and held that an action for breach thereof and for an injunction can be maintained.

1. This action was brought to restrain defendant from selling patterns for ladies' and children's garments made by a competitor of plaintiff in violation, as alleged, of the terms of a contract made between the parties. The complaint sets forth a good cause of action. It alleges a contract between the parties which by its terms covered the period in dispute, an agreement by the plaintiff to sell certain goods to defendant and by the latter not only to use due and specified methods for selling such goods but to refrain from selling similar goods of another make, and finally a breach by the defendant of this latter agreement under circumstances which would render pecuniary damages an inadequate method of relief for the injury which plaintiff was suffering by reason of such violation. There is no suggestion that the contract is in violation of any statute or in any respect illegal. Under such circumstances it is well settled that a court of equity will restrain the violation of a so-called negative covenant. The fact that the court notwithstanding its jurisdiction may as a matter of discretion refuse to give relief for the reason that the contract is ambiguous and uncertain does not warrant the decision that the complaint is insufficient under the challenge of a general demurrer.

2. The contract provides that " at any time within 30 days after the expiration of any contract term as herein specified either party may give the other a notice in writing of a *desire* to terminate the agreement and upon the *expiration of six months* following such notice or within one week — either before or after — said expiration all

patterns held by the party of the second part shall be returned." A further clause provides that " the party of the first part shall pay the said party of the second part in current funds within 30 days of the time of delivery to it of said patterns (so returned at the expiration of six months) three-fourths of the amount charged for the same, but patterns returned, either for exchange or for *redemption* at the *termination* of the agreement must have been procured direct from the party of the first part." While the contract was in force defendant served upon plaintiff a notice that it " desires to terminate and does hereby terminate pursuant to and in accordance with the terms thereof." *Held*, that the termination of the agreement is not to occur at once but at the end of six months after the service of notice and when the patterns are presented for redemption.

*Butterick Publishing Co.* v. *Loeser & Co.*, 196 App. Div. 1, reversed.

(Argued October 3, 1921; decided November 22, 1921.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April 1, 1921, which reversed an order of Special Term granting a motion for an injunction *pendente lite.*

The following questions were certified: " 1. Does the complaint herein state facts sufficient to constitute a cause of action? 2. Was the contract herein terminated on January 20, 1921, by the service of a notice of a desire to terminate the same? "

*James B. Sheehan* for appellant. The complaint states facts sufficient to constitute a cause of action. (*Standard Fashion Company* v. *Siegel Cooper Co.*, 157 N. Y. 60; 30 App. Div. 564; *Butterick Pub. Co.* v. *Fisher*, 203 Mass. 122; *Butterick Pub. Co.* v. *Rose*, 141 Wis. 531; *Peerless Pattern Co.* v. *Gauntlett Dry Goods Co.*, 171 Mich. 158; *Butterick Pub. Co.* v. *Chabot*, N. Y. L. J., July 21, 1908; 129 App. Div. 912; *Standard Fashion Company* v. *Sawyer*, N. Y. L. J., Dec. 26, 1912; *Standard Fashion Company* v. *Junction Dry Goods Co.*, N. Y. L. J., May 7, 1907; 120 App. Div. 881; *Butterick Pub. Co.* v. *Mayer*, N. Y. L. J., Aug. 2, 1907; *New Idea Pattern Company* v. *Rottenberg*, N. Y. L. J., Aug. 2, 1907; *New Idea Pattern Company* v.

*Milstein,* N. Y. L. J., May 13, 1909.)' The contract herein was not terminated on January 20, 1921, by the service of a notice of a desire to terminate the same. (*Butterick Pub. Co.* v. *Fisher,* 203 Mass. 122; *Butterick Pub. Co.* v. *Rose,* 141 Wis. 533; *Paxon Bros.* v. *Butterick Pub. Co.,* 71 S. E. Rep. 1105; *Standard Fashion Co.* v. *Magrane Houston Co.,* 259 Fed. Rep. 793; *Matter of Lewison,* 121 Fed. Rep. 538; *Lincoln* v. *Wakefield,* 237 Penn. St. 97; *Barney* v. *Hayes,* 11 Mont. 571; *Mattoon* v. *Monroe,* 21 Hun, 74; *Fox* v. *International Hotel Co.,* 41 App. Div. 140; 168 N. Y. 658; *Clark* v. *Devoe,* 124 N. Y. 120; *Sattler* v. *Hallock,* 160 N. Y. 291; *Williams* v. *Gridley,* 110 App. Div. 525; *Dierig* v. *Callahan,* 35 Misc. Rep. 31.) The court below erred in construing the negative covenant as not continuing during the entire term of the contract. (*Standard Fashion Co.* v. *Magrane Houston Co.,* 251 Fed. Rep. 559.) The court below erred in holding the negative covenant and minimum stock provision unreasonable. (*Flanagan* v. *Fox,* 6 Misc. Rep. 132; 144 N. Y. 706; *Eastman* v. *Horne,* 205 N. Y. 486; 141 App. Div. 12; *Drake* v. *Gaffney,* 183 App. Div. 577; *Carroll* v. *Title Guarantee & Trust Co.,* 131 App. Div. 221; *Smith* v. *Bell Fyfe Foundry Co.,* 127 App. Div. 278.)

*Merton E. Lewis* for respondent. The service of the notice of termination for which the agreement specifically provided terminated the agreement on January 20, 1921, and relieved the respondent thereafter from the operation of the negative covenants. (*Peerless Pattern Co.* v. *Dry Goods Co.,* 171 Mich. 158; *Butterick Co.* v. *Rose,* 141 Wis. 647; *Standard Fashion Co.* v. *Magrane Houston Co.,* 259 Fed. Rep. 793.) A court of equity should neither enforce an ambiguous agreement, nor enjoin acts alleged to be in violation of such an agreement. (*Colson* v. *Thompson,* 2 Wheat. 341; *Dalzell* v. *Dueber Mfg. Co.,* 149 U. S. 315.)

HISCOCK, Ch. J. This action was brought to restrain defendant from selling patterns for ladies' and children's

garments made by a competitor of plaintiff in violation, as alleged, of the terms of a contract made between the parties. The questions which have been certified to us have arisen on an appeal from an order by the Appellate Division vacating an injunction granted by the Special Term restraining defendant from thus selling the competitor's patterns during the pendency of this action and the first of these involves the sufficiency of the complaint. In examining that pleading in response to this question we shall summarize its voluminous and rather prolix allegations by stating as briefly as possible the substance of those which are material in this controversy.

By its allegations it appears that the plaintiff was engaged in the manufacture and sale of paper patterns for women's and children's garments and as the result of the long-continued conduct of this business had established a high reputation. It largely marketed its patterns under contracts with individuals and corporations called special agents for the sale thereof and describing in considerable detail the duties and obligations of the plaintiff and the so-called special agents. The defendant was the proprietor of a large dry goods and department store in the city of Brooklyn and because of its large business and reputation was an especially desirable agency to be used by plaintiff in marketing its wares. Under these circumstances January 20, 1919, a contract was made between the parties covering the subject of the purchase and sale by defendant of plaintiff's patterns and which we shall briefly recapitulate, again omitting provisions which are formal or immaterial in this discussion. The plaintiff, as party of the first part, agreed that defendant, as party of the second part, should have " the right to act as special agent for the sale of its patterns in their store in Brooklyn, State of New York;" to furnish to defendant patterns at certain prices and advertising matter and to permit the exchange

of patterns which had been purchased for new patterns. The defendant as party of the second part agreed " to purchase from the party of the first part and to keep on hand for sale at all times during the period this agreement continues in force patterns to the amount of $2,000 at 50% of retail prices;  *  *  *  to purchase for free distribution fashion sheets from the party of the first part to a number not less than 180,000 sheets of Butterick Fashions per annum," all of which were to be paid for as therein specified; to keep patterns in a certain prominent place in its store and to give proper attention to the sale thereof; " to conserve the best interests of the party of the first part at all times; not to sell or permit to be sold on the premises of the party of the second part during the term of this contract any other make of patterns." Then followed a clause which more than any other has become the immediate cause of dispute. It provided: " This agreement shall remain in force for the term of two years from date and from year to year thereafter until it shall be terminated in the following manner: At any time within 30 days after the expiration of any contract term as herein specified either party may give the other a notice, in writing, of a desire to terminate the agreement, and upon the expiration of six months following such notice, or within one week — either before or after — said expiration, all patterns held by the party of the second part shall be returned to the party of the first part at its General Office in New York; and if all the provisions of this agreement shall have been performed by the party of the second part, the party of the first part shall pay to said party of the second part in current funds, within thirty days of the time of delivery to it of said patterns, three-fourths of the amount charged for the same, but patterns returned, either for exchange or for redemption at the termination of the agreement, must have been procured direct from the party of the first part, and not through any other party."

As then is further alleged in the complaint the parties duly entered upon and continued in the performance of this contract, doing a business which amounted to many thousands of dollars each year, until January 10, 1921, 'when the defendant refused to comply with the terms of its contract and not only failed to make the exertions to sell plaintiff's patterns which it had promised but commenced the advertisement and sale in its store of patterns made by a competitor of plaintiff in violation of the terms of the contract, and otherwise violated its agreement; that the result of these violations if continued would be an injury in various specified ways which could not be measured by ordinary damages and entitled the plaintiff to an injunction which it demanded with other appropriate relief.

We have no doubt that this complaint sets forth a good cause of action. It alleges a contract between the parties which by its terms covered the period in dispute, an agreement by the plaintiff to sell certain goods to defendant and by the latter not only to use due and specified methods for selling such ·goods ·but ·to refrain from selling similar goods of another make, and finally a breach by the defendant of this latter agreement under circumstances which would render pecuniary damages an inadequate method of relief for the injury which plaintiff was suffering by reason of such violation. There is no suggestion ·that the contract is in violation of any statute or in any respect illegal. Under such circumstances it is well settled that a court of equity will restrain the violation of a so-called negative covenant, this principle having been abundantly settled in actions involving agreements of the same general nature as that which is presented here. (*Standard Fashion Company* v. *Siegel-Cooper Co.*, 157 N. Y. 60; *Butterick Pub. Co.* v. *Rose*, 141 Wis. 533; *Butterick Pub. Co.* v. *Fisher*, 203 Mass. 122.)

It is urged, we judge as an argument against the

sufficiency of the complaint, that the contract between the parties is so ambiguous and uncertain that a court of equity will neither decree specific performance nor enjoin violation of negative covenants. The occasion of this contention is a notice served by defendant purporting to terminate the contract and whereby there is especially brought under consideration the clause in the contract providing for its termination and which is said to be too ambiguous to become the basis of relief in this action. This question of ambiguity is hereafter discussed in connection with the second question which has been certified to us and for the sake of argument we shall assume here that this clause of the contract is subject to the faults which are attributed to it. Nevertheless they do not impair the sufficiency of the complaint as we are considering it. In the first place the allegations of the complaint contain no reference to the attempt by defendant to terminate the contract and, therefore, they do not present the question of ambiguity as it is argued by defendant. But in the second place such faults if they were disclosed by the complaint would not render it insufficient if in the end we should give to the contract the interpretation claimed for it by the complaint. In order to satisfy the test of sufficiency it is only necessary that the complaint shall set forth a cause of action which entitles a court of equity to take jurisdiction and give relief. The fact that the court notwithstanding its jurisdiction may as a matter of discretion refuse to give relief for the reason stated does not warrant the decision that the complaint is insufficient under the challenge of a general demurrer. (*Standard Fashion Company* v. *Siegel-Cooper Co., supra.*)

Thus we reach the second question which has been certified to us. On January 20, 1921, the contract between the parties was in force and on that date acting under the provision already quoted in full defendant served upon plaintiff a notice that it " desires to termi-

nate and does hereby terminate pursuant to and in accordance with the terms thereof a certain agreement in writing which agreement bears date the 20th day of January, 1919," being the one herein involved. On these facts the question is certified to us in effect whether this notice had the effect of terminating the contract at once or only after the expiration of six months. If the former view should be taken, that is that the contract was terminated immediately, defendant's violations at the most had only continued for ten days and would be quite inconsequential.

The decision of this question brings us to the construction of a clause in the contract which is so ill-expressed and obscure in meaning that it drives interpretation well towards the verge of guess-work. Applying, however, such reasoning as is possible, we reach the conclusion that the better argument is in favor of plaintiff's contention that the contract did not terminate for six months after the service of notice. This conclusion is largely based upon the language of two clauses. First it is provided that " at any time within 30 days after the expiration of any contract term as herein specified either party may give the other a notice in writing of a *desire* to terminate the agreement and upon the *expiration of six months* following such notice or within one week — either before or after — said expiration all patterns held by the party of the second part shall be returned." Then a further clause provides that " the party of the first part shall pay the said party of the second part in current funds within 30 days of the time of delivery to it of said patterns (so returned at the expiration of six months) three-fourths of the amount charged for the same, but patterns returned, either for exchange or for *redemption* at the *termination* of the agreement must have been procured direct from the party of the first part."

The first thing which attracts the attention is that notice may be given of a " desire " to terminate the

agreement. A desire relates to the future · and gives expression to a hope or expectation and when a person gives notice of a desire to do something one naturally thinks of a consummation yet to come rather than one then actually accomplished. So, a desire to terminate a contract would seem to indicate a wish for something which is to be effected in the future. Then having given notice of a desire to terminate the agreement it is provided that upon the expiration of six months the party of the second part might return patterns for redemption, the clause being added that "patterns returned * * * for redemption at the termination of the agreement" must have been procured directly from the party of the first part and so forth. Thus we have the somewhat connected ideas and language that there is to be service of a notice of a desire to terminate a contract; that the party of the second part upon the expiration of six months is to have the right to present patterns for redemption and finally the language which describes patterns so presented for redemption at the end of six months as being presented at "the termination of the agreement." Giving consideration to these sentences in this manner we gather the idea, as the most intelligible one to be gathered from this contract, that the termination of the agreement is to occur at the end of six months after the service of notice and when the patterns are presented for redemption.

Various practical arguments against this interpretation are urged by the respondent. It is argued that the vendee of the patterns ought not to be compelled to carry on this contract for six months after the desire to be relieved from it and to enter into other engagements. This does not seem substantial. Such disadvantage is no more than is frequently required under a contract of more or less indefinite duration where either party is required to give notice of some prescribed length of his desire to terminate the same.

The other argument is of more importance. The defendant under the agreement was required to keep on hand patterns of a value of $2,000 at the prices under which they were purchased and also to take certain advertising matter, the value of which is not mentioned. If the contract continued in force for six months after notice the defendant would be compelled to keep up its stock of patterns and the plaintiff would be entitled to redeem this stock on the expiration of the contract at a price 75% of that which had been paid by the defendant for it. This at the outside might involve a loss of $500 to the defendant and does present a somewhat illogical situation. We do not, however, think that it is of sufficient seriousness to influence that interpretation of the contract which otherwise seems most natural. It is possible that under the terms of the agreement the parties thought that the defendant was getting favors of sufficient consequence to offset this particular disadvantage. Or, as perhaps is more probable, the parties did not consider what would be the meaning and effect of the contract in this respect and which oversight of course would not be a sufficient reason for relieving a party from his obligations.

In accordance with these views the questions certified to us should be answered, the first one in the affirmative and the second one in the negative and the order appealed from reversed, with costs in this court and the Appellate Division.

HOGAN, CARDOZO, POUND, MCLAUGHLIN, CRANE and ANDREWS, JJ., concur.

Order reversed, etc.