Morris E. Sfector, J.
Plaintiffs move for a temporary mandatory injunction restraining the termination of franchised dealerships, directing delivery to the plaintiffs of automobiles in accordance with prior separate agreements and restraining the designation of others as franchised dealers.
Plaintiffs had acted as dealers for the defendant Renault, Inc. while the latter was both importer and distributor and until December, 1958, when defendant Magna Motors, Inc. was designated as Renault’s distributor. By letter of January 15, 1959, Renault notified the plaintiffs that, effective January 10, 1959, Renault, Inc. terminated its position as distributor, surrendered the distributorship to Magna Motors, Inc. and that the latter had complete authority over and responsibility for dealerships. The charge that the designation of Magna was made in bad faith and with the purpose and design to defeat the plaintiffs of their rights is not adequately supported. Plaintiffs rely, however, on section 197 of the General Business Law which reads: “No manufacturer or distributor, or any agent of such manufacturer or distributor, shall terminate any contract, agreement, or understanding or renewal thereof for- the sale of new motor vehicles to a distributor or dealer, as the ease may be, except for cause.”
Plaintiffs appear to be 6 of 15 dealers formerly engaged in the sale of Renault’s products and were in relationship with Renault as distributor. Renault’s sales in 1956 were 3,000; in 1957, 26,000; in 1958, 56,000; and 1959 the objective 100,000. The New York Metropolitan Area is its principal market. *792 Obviously plaintiffs undertook the dealerships with the necessary expenditure of time, effort and money and, as alleged, with the promise of a forthcoming dealership contract. Repeated demands were unsatisfied. As late as December 12, 1958, defendant Renault requested of plaintiff All New York Auto Corp., by letter, certain information, “ In order to have on hand sufficient information to prepare our contemplated dealer franchise agreement, we would like to receive by January 14, 1959, the following information ”. It was in that month that the arrangement was reached with the defendant Magna. Defendant Renault had, it seems, already prepared a form of dealer contract, but none was ever offered to the plaintiffs. These matters have not been denied. It does appear that in January, 1959, and thereafter the defendant Magna, at Renault’s request that its former dealers be given preference, did confer with the plaintiffs who failed of designation as dealers because, as Magna claims, the plaintiffs failed to satisfy minimum requirements. It would appear that the plaintiffs did, in fact, have substantial requirements and qualifications in causing in large part the business of Renault to so mushroom as to render an independent distributorship essential for the efficient management of its business and the securing of maximum sales. In the meantime defendant Magna has set up its dealerships through which defendants seek to achieve their objectives and to which the ensuing months are of primary importance.
The question is whether in all these circumstances a temporary mandatory injunction is in order. In the balancing of convenience and injury, the court reaches the conclusion that this drastic relief is not in order. The agreement which is to be specifically enforced is not fully delineated. Nor is it clear that with plaintiffs’ experience remedy at law is not adequate. If plaintiffs possess a cause of action pursuant to the General Business Law, the remedy at law would also appear to be adequate. While claimed laches may not defeat the action, it is fair to say that plaintiffs, having full knowledge of the situation in January of this year since which time intervening rights have arisen, have awaited the summer months and too long to support a claim of right to temporary mandatory relief so drastic.
The motion is denied.