**AUTOWEST, INC., Plaintiff,**

v.

**PEUGEOT, INC., Defendant.**

No. 66 C 165.

United States District Court
E. D. New York.
March 29, 1966.

---

Stanley Geller, New York City (Butler, Jablow & Geller, New York City, of counsel), for plaintiff.

Alexis C. Coudert, New York City (William Rand, Jr., Stanley R. Raskin, and Coudert Brothers, New York City, of counsel), for defendant.

## MEMORANDUM

DOOLING, District Judge.

Plaintiff's motion is to enjoin defendant from terminating the importer-distributor relation between the parties or substituting a new Western States distributor for plaintiff (15 U.S.C. §§ 1221–1225, New York General Business Law, McKinney's Consol.Laws, c. 20, §§ 195–197, Bateman v. Ford Motor Co., 3d Cir.1962, 302 F.2d 63, 66–67, Cf. Wagner v. *World Wide Automobiles*, W.D.N. Y.1961, 201 F.Supp. 22, 24, Staten Island Motors, Inc. v. American Motor Sales Corp., D.N.J.1959, 169 F.Supp. 378, 381); defendant moves to enjoin plaintiff from threatening to sue the Western States dealers if they stop dealing with plaintiff and give their business to defendant's substitutional distributor. Both motions are denied.

The facts have been separately found.

 It may be that "equity jurisdiction" exists to arrest defendant's unilateral ending of whatever importer-distributor relation existed on February 15, 1966, when defendant acted. Bateman v. Ford Motor Co., supra, says that. All New York Auto Corp. v. Renault, Inc., N.Y.Co.1959, 19 Misc.2d 790, 190 N.Y.S.

2d 410, aff'd., 1st Dept.1960, 10 A.D.2d 910, 202 N.Y.S.2d 200 notes that the absence of a truly adequate remedy at law is not implicit in the ending of a dealership, and Deltown Foods, Inc. v. Tropicana Products, Inc., S.D.N.Y.1963, 219 F.Supp. 887 indicates that even the presence of an express statutory base for the prayer for injunction does not dispense with the need to show a fair prospect of ultimate success on the merits. It may be, too, that there are supposable circumstances in which a preliminary injunction must be granted—as where private right and a strong statutory public policy coincide in demanding maintenance of a *status quo* of dealing. Bergen Drug Co. v. Parke, Davis & Co., 3rd Cir.1962, 307 F.2d 725; Cf. House of Materials, Inc. v. Simplicity Pattern Co., 2d Cir.1962, 298 F.2d 867, 870, 871–872. And there are cases where an express (or genuinely implicit) covenant not to deal with any one else is ready at hand to give a contract base for a negative injunction that is relatively certain to preserve or restore the old distributor-dealer relationship. Standard Fashion Co. v. Siegel-Cooper Co., 1898, 157 N.Y. 60, 66, 51 N.E. 408, 43 L.R.A. 854; Liedermann v. Voco, Inc., Kings Co. 1947, Sup., 73 N.Y.S.2d 462; Cf. Butterick Pub. Co. v. Frederick Loeser & Co., Inc., 1921, 232 N.Y. 86, 133 N.E. 361.

■ In the present case, however, the claim to preliminary injunctive relief rests only on the existence of the importer-distributor relation and the controverted promise of its continuance supported by the statutory restrictions on discontinuance and the fact that termination for the duration of a lawsuit is, necessarily, irreversible and, therefore, permanent. There is here no promise on defendant's part not to deal with others (Cf. Garvin v. American Motor Sales Corp., 3rd Cir.1963, 318 F. 2d 518, 520); the business expectation of the parties and the probabilities of fact are not, for present purposes, relevant; a legal fear may have dictated foregoing the right to be an exclusive distributor; the surrender of it is nonetheless real for that fact.

■ Whatever else may be thought, it cannot be easily supposed that importer-distributor contracts form a class especially eligible for specific performance as, legal history seems to indicate, are land contracts and contracts for unique chattels—or the services of uniquely talented people. Rather the right to the equitable specific relief of injunction, it would seem, must be here made out from some aggregate of circumstances that demonstrates that specific relief is manifestly more appropriate than damages. That cannot here be done. The galling harness of an injunction cannot create teamwork. At best an experiment, a preliminary injunction could well be wholly damaging here, jeopardizing any claim for damages that plaintiff might otherwise have without giving it any assurance that the experiment would not simply lengthen its losses. Too much would depend on efforts of continuing cooperation that are difficult to expect of parties locked in litigation and impossible to command. Cf. Bach v. Friden Calculating Mach. Co. Inc., 6th Cir.1946, 155 F.2d 361, 366; Engemoen v. Rea, 8th Cir.1928, 26 F.2d 576, 578–579. A negative injunction will not serve where it is cooperation and reciprocal action that is required; here the duties and the rights of the importer are of that sort and not simple duties to pay money. Cf. Bethlehem Engineering Export Co. v. Christie, 2d Cir.1939, 105 F.2d 933, 935.

On the facts of the present case as they appeared from the affidavits and testimony, it cannot be said that a fair prospect of ultimate success has been shown. The tantalizing question of the status of the relation between the parties on February 15, 1966, is, perhaps, only superficially difficult. It would not be too easy to infer an automatic franchise extension of one year if the parties had been altogether silent at the end of the first year and had, in that way, created some basis for arguing that they

must have meant to adopt exactly the first year contract form as their contract for an intended second year. That would defy their explicit undertaking to write out a new agreement each year and deny to their silence and inaction the legal effect that their contract advertently sought to impose on it. More pointedly, it would rule out the inference that their failure to execute a new contract had meaning, the plain meaning that they would follow along without definite term until they reached either a parting or a will to reduce their arrangement to a new writing. But here the parties adverted to the need for a new agreement, deferred consideration of whether to make a new agreement or part, and then went on, in inconclusiveness of manifested intention, and did not again advert to making an agreement. No inference of an intention to be bound to each other for a definite term grows out of ground so lean. The ambiguity may have pleased each party, for perhaps each had much to consider and reconsider as the Renault transaction took shape; and, perhaps, each may have thought that the future was not going to be a simple continuance but a thing of a new shape altogether when the Renault transaction was over. Plaintiff's present position does not imply that it may not calculatedly have kept its whole position under reserve until January 10 at least.

The ambiguities here are not ambiguities of inference from evidence that can be supposed to have a single meaning if its riddle can be read; the ambiguities here are intrinsic in the conduct of the parties, unless one imposes on them the idea that they, somehow, intended to contract by silence or inadvertence or both. There is no ground at all for inferring inadvertence here; no ground either for saying that their omission to make a new agreement was not advertent. So, on the present record, there is no way of saying that a contract for a definite term was made out. In this view the lesson of New York Telephone Co. v. Jamestown Telephone Corp., 1940, 282 N.Y. 365, 371, 26 N.E.2d 295, limited as it is (Cf. Miller v. Schloss, 1916, 218 N.Y. 400, 406–407, 113 N.E. 337; Martin v. Campanaro, 2d Cir.1946, 156 F.2d 127, 129)—that an expired contract may furnish the transactional terms on which a continuing relation will operate—has no application; the expired contract is impotent to establish that there is a new contract and to define the duration of the new contract; it may furnish, in default of a new agreement, the basis on which the transactions that constitute the informal continuance of the relation will be conducted and liquidated, but it goes no farther. Cf. Martin v. Campanaro, supra.

That does not mean that defendant could act in disregard of relevant statutory duties engrafted on the relation. But viewed in that perspective the evidence simply fails to meet the applicable standards.

Defendant's cross-motion does not require discussion.

The motions must be denied.