**Freddy Martinez AYBAR and Alfredo Martinez Blanco, d/b/a Freddy Martinez Aybar and Sons, Plaintiffs,**

v.

**F. & B. MANUFACTURING CO., INC., Defendant.**

Civ. No. 80–0424.

United States District Court,
D. Puerto Rico.

Sept. 18, 1980.

Carlos Ortíz Morales, Old San Juan, P. R., for plaintiffs.

Jaime Pieras, Jr., Guillermo Cintrón Ayuso, Hato Rey, P. R., for defendant.

## OPINION AND ORDER

PEREZ–GIMENEZ, District Judge.

The present action came to this Court upon defendant's petition for removal under 28 U.S.C. § 1441 [1] of a claim by plaintiffs which was filed in the Superior Court of Puerto Rico, San Juan Section.

The action involved a civil petition under Public Law No. 75, approved on June 24, 1964, 10 L.P.R.A. 275, et seq.[2]

Plaintiffs allege they had a distribution contract and exclusive sales[3] agreement and that defendant, in violation of said contract and impairing its obligation with plaintiffs, began to sell by itself the product in the Puerto Rican market and in other instances has requested from the local market to buy through third persons, mainly exporters situated in Miami, Florida.

■ In any litigation involving the termination of a Dealer Contract the Court may grant, pursuant to Article 3–A of Public Law 75, 10 L.P.R.A. 278(b)(1), pending the solution of such litigation, any provisional remedy ordering any of the parties or both to continue the relationship established by the Dealers' Contract and adhere to all its terms and conditions.

1. Original jurisdiction has been invoked under 28 U.S.C. § 1332.

2. Public Law 75 of June 24, 1964, 10 L.P.R.A. 275, et seq., better known as Dealers' Contract Act, regulates the unlawful termination of dealership contracts.

3. It has been alleged that during the last 35 years plaintiffs have dedicated themselves to representing and selling in Puerto Rico, the Virgin Islands and Santo Domingo, Filco motor vehicle products manufactured in the United States by defendant, which is a corporate entity situated in the city of Chicago.

In the state court plaintiffs requested the remedy provided for by 10 L.P.R.A. 278(b)(1), alleging that they are divested of any other protective remedy and that failure to issue the remedy may cause permanent damages to their rights under the contract.

The Superior Judge who considered the petition rendered an order on December 27, 1979, granting plaintiffs' request and impeding defendant from distributing its merchandise unless it be through the plaintiffs. The order which we transcribe in full reads:

"Concerning the Petition for orders filed by Plaintiffs as prescribed by law 75 of June 24, 1964 it is hereby granted by the Court and Defendant F. and B. Manufacturing Co., Inc., Filko Ignition Division, are hereby ordered not to distribute by themselves or through any third person or entity, unless it is through the petitioner herein, during the time that this case is pending before this Court and a final judgment is entered.

"Defendant and or any other person or entity is hereby notified that non–compliance with this order will carry a penalty for judicial contempt.

"At San Juan, Puerto Rico, this 27th day of December, 1979.

"Abner Limardo
Superior Judge"

The case having been removed to this Court defendant filed on March 31, 1980, a Motion to Vacate Injunction, alleging that the order entered by the Superior Court of Puerto Rico should be vacated.

In addition to a challenge in the sense that the complaint failed to state a cause of action under Law 75, it was contended that the injunction is causing defendant irreparable damages and that the effect of the injunction had expired under Rule 65(b) of the Federal Rules of Civil Procedure.[4]

Based on the aforementioned contentions defendant requested from this Court to enter an order under Rule 65(b) vacating the injunctive order and confirming that said order entered in the case before the Superior Court of Puerto Rico expired and is not any more in full force and effect.

To defendant's motion plaintiffs filed their opposition.

On April 25, 1980, we entered an Opinion and Order through which the temporary restraining order granted by the Commonwealth Superior Court was left in full force and effect. The Court denied defendant's motion to vacate the injunction in the determination that the temporary restraining order is to be treated under the provisional remedy section of the Puerto Rico Dealers' Contract Law, 10 L.P.R.A. 278(b)(1), as substantive law controlling on the federal court, and not under Rule 65(b), therefore not tied to a showing of irreparable injury or to probability of success on the merits, but rather to the policies of the Act in promoting the continuation of dealership agreements and the strict adherence to the provisions of such agreements. *De Moss v. Kelly Services, Inc.*, 493 F.2d 1012 (1 Cir., 1974).

On April 24, 1980, plaintiffs filed a Motion Requesting Order to Show Cause alleging that notwithstanding the fact that the Injunctive Order issued by the Superior Court of the Commonwealth of Puerto Rico is in full force and effect defendant has continued to sell its products in Puerto Rico after December 27, 1979, through other means that plaintiffs, in violation of the order of the Court.

On May 20, 1980, defendant filed a Motion for Clarification to Vacate or Modify TRO and Request for Hearing.[5] Defendant

---

4. The contention that the injunction had expired under the F.R.C.P. (Rule 65(b)) is grounded on the ruling in the case of *Granny Goose Foods, Inc. v. Brotherhood of Teamsters Auto Truck Drivers*, 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974), which in its pertinent part provided: "Once a case has been removed to federal court, federal law, including Federal Rules of Civil Procedure, controls the future course of the proceedings, not withstanding state court orders issued *prior to removal*". (emphasis supplied)

5. The evident remedy available to defendant if dissatisfied with the continuation in full force of the restraining order granted by the state court before removal was to request relief from this Court under 28 U.S.C. § 1450 to dissolve or

therein moved and prayed for a hearing under 28 U.S.C. § 1450 to consider the dissolution or modification of the ex parte TRO entered by the State Court. Defendant alleged that under the decision in the case of *Granny Goose, supra,* this Court should consider the State Court's temporary restraining order defunct in view that the ten days provided by Rule 65(b)[6] and Rule 5 of the Puerto Rico Rules of Civil Procedure have elapsed. The parties were called for oral argument on July 8, 1980.

With the foregoing factual background of the case it appears that the issue presented herein revolves around the nature of the injunctive remedy provided for by Article 3–A of Law 75. The text of the article provides:

"In any litigation in which there is directly or indirectly involved the termination of a dealers' contract or any act in prejudice of the relation established between the principal or grantor and the dealer, the Court may grant, during the time the litigation is pending solution, *any provisional remedy or measure of an interdictory nature* to do or to desist from doing, ordering any other parties or both, to continue, in all its terms, the relation established by the dealers contract, and or to abstain from performing any act or any omission in prejudice thereof. In any

case in which the provisional remedy herein provided is requested the Court shall consider the interests of all parties concerned and the purposes of the public policy contained in this chapter." 10 L.P.R.A. 278(b)(1).

Analyzing the question presented herein the Court finds that the crux of the matter is whether the rules of civil procedure are applicable or not to the remedies issued under 10 L.P.R.A. 278(b)(1).

The conditions surrounding the genesis of the enactment of Article 3–A, 10 L.P.R.A. 278(b)(1), and the legislative intent expressed in said enactment provides a valuable vantage point from which to secure a full perspective of constructional foundations for our interpretation and conclusion.

The provisions contained in Article 3–A were added to Law 75 to clarify and to definitely solve a confusion that existed in the local courts at the time. This uncertainty had its inception since the enactment of Law 75 itself, partly because of a confusion also existing within the federal ambit.

To gain a true perspective of what has been said we must first understand that Law 75 was patterned after the Automobile Dealers' Day in Court Act, 15 U.S.C. § 1221, et seq. The federal cases interpreting the statute attest to the uncertainty encoun-

modify the same. *Standard Forms Co. v. Nave,* 422 F.Supp. 619 (E.D.Tenn., 1976). 28 U.S.C. § 1450 provides: "All injunctions, orders and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the District Court.".

**6.** Defendant prays for its dissolution alleging that the remedy has expired under the time provisions set forth in the Rules of Civil Procedure inasmuch as the duration of any TRO issued by a State Court ex parte and without notice and hearing, once the case is removed to the Federal Court, expires at the termination of the ten days provided by Rule 65(b). Rule 65(b) provides:

"(a) Preliminary Injunction.
"(1) Notice. No preliminary injunction shall be issued without notice to the adverse party.
"...
"Every temporary restraining order granted without notice shall be indorsed with the date and hour of issuance; shall be filed

forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice; and shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension shall be entered of record. In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time and takes precedence of all matters except older matters of the same character; and when the motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a preliminary injunction and, if he does not do so, the court shall dissolve the temporary restraining order."

tered by the federal judiciary as to whether the torts action provided by the statute was an exclusive remedy which barred a court of justice from granting injunctive relief in the protection of the party who promoted the action. A line of federal cases interpreted, however, that the failure of Congress to provide for injunctive relief under the Dealers' Day in Court Act did not negate the general equity power of the Court to grant injunctive relief.

In *Bateman v. Ford Motor Co.*, 302 F.2d 63 (3 Cir., 1962) an automobile dealer filed an action against the manufacturer seeking a preliminary injunction and damages under the Dealers' Day in Court Act. The District Court denied injunctive relief, but the Court of Appeals held that under the general powers of the Court in equity the District Court had authority to enter a preliminary injunction although the Act made no provision for injunctive relief. It was further ruled that the Court could enjoin the dealer from canceling the franchise.

In *Autowest, Inc. v. Peugeot, Inc.*, 287 F.Supp. 718 (E.D.N.Y., 1966) the availability of injunctive relief was not negated, but the same was reduced to a particular set of circumstances. Here the plaintiffs filed a motion to enjoin defendant from terminating the importer–distributor relationship between the parties or to substitute a new distributor for plaintiff. On the availability of the injunction the Court ruled: "At best an experiment, a preliminary injunction could well be wholly damaging here, jeopardizing any claim for damages that plaintiff might otherwise have without giving it any assurance that the experiment would not simply lengthen its losses." At page 720. The Court in *Clifford Jacobs Motors, Inc. v. Chrysler Corp.*, 357 F.Supp. 564, 573 (S.D.Ohio, 1973) ruled that " . . . the reference to damages in section 1222 does not preclude the granting of an injunction against the termination, cancelling, or failure to renew the franchise agreement".

Citing from the decision in the case of *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197 (2 Cir., 1970), the court in the case of *Clifford Jacobs, Inc., supra,* further expressed that in order to prevail on a motion for preliminary injunction a plaintiff has the burden of establishing a clear case of *irreparable injury,* of convincing the court that the balance of injury favors the granting of an injunction and of establishing the probability of success at trial on the merits. Thus, it was made clear that a petitioner had to comply with the substantive prerequisites provided by the rules of Civil Procedure to obtain the remedy from the court.[7]

The case of *Moto Sports, Inc. v. Gulf States Toyota, Inc.,* 324 F.Supp. 653 (S.D. Texas, 1971) offers a fine synthesis of the situation existing in federal courts with respect to the availability of injunctive relief under the Automobile Dealers' Day in Court Act.

The case is a fine example of the foregoing, to wit: that even though injunctive relief was not expressly made available under the Automobile Dealers' Act, some federal courts granted the injunction in certain cases upon the determination that equitable relief was not cut off by the Act. The case outlines rulings in other federal cases dealing with the same subject matter and points out that the majority of the cases where injunctive relief had been granted by federal courts were cases where the previous franchise agreement had not yet expired, or cases where the automobile dealer was a single–line dealer and irreparable damage would have occurred.

On the other hand, cases where injunctive relief was denied included, among others, cases in which money, damages, while difficult to ascertain, were calculable and constituted a proper and adequate relief; cases in which granting injunctive relief would be tantamount to decreeing specific performance of an agreement not of the type which is traditionally specifically enforceable; and cases where the injunction would impose an impossible task of supervising continuous performance.

7. Rule 65 F.R.C.P. also describes the permissible form and scope of an injunction whether it be a preliminary, permanent or a temporary restraining order.

Speaking on the considerations to be weighed in granting the injunctive remedy the Court stated:

"In ruling on the propriety of granting a preliminary injunction in a case of this type the Court must consider whether the *status quo* would effectively be preserved by the granting of an injunction, and whether *irreparable harm* will result if injunctive relief is denied. The Court must also consider plaintiffs' likelihood for ultimate success in this suit; that is, here, whether plaintiffs can show lack of good faith *per se* by the defendant in which coercion, intimidation or threats were determining factors in the failure to review the franchise agreement." *Moto Sports, Inc., supra*, at 656.

■ Like the law under which it was modeled, Law 75 made no provision for the granting of injunctive relief. However, despite this failure of the law, the Courts of Puerto Rico had been granting provisional remedies in cases arising under it on the understanding that the torts action established in the statute was not exclusive. It was also felt that any measure which would promote the interests enunciated in the statement of motives of the law would be appropriate after duly considering the interests of the parties involved in the action. See "Diario de Sesiones 1971", at 1206.[8]

It is of utmost importance to realize that the concern[9] which the Legislature of Puerto Rico expressed in the enactment of Public Law 75 was the driving force conducive to the addition of Article 3–A, and provided the guidelines for its configuration. In 1971 the Legislature of Puerto Rico felt the need to incorporate into Law 75, Article 3–A, 10 L.P.R.A. 278(b)(1), which provided for the provisional remedies in actions involving the termination of contracts of distribution.

The joint report[10] rendered on the measure speaks of the compatibility of the remedy with the provisions of Law 75 in stating that such faculty is not foreclosed by Law 75. Although it is stated in said report that some courts such as the District Court for the District of Puerto Rico had expressed doubts as to the existence of faculties to grant such provisional remedies, the committee goes on and states that under the Automobile Dealers' Day in Court Act, (with an evident reference to federal cases like the ones cited *supra*), which served as model for Law 75, such faculty has been recognized by the Courts. See "Diario de Sesiones 1971", at 1207.

It is clear that under the federal cases discussed *supra*, and to which the Joint Report by the Commission on Planning, Commerce, Industry and Government has made reference, the type of remedy requested to and granted by the federal courts therein was the *preliminary injunction*. Thus, it is certainly logical·that in stating that the courts had faculty to enter said remedies the Legislature of Puerto Rico had to be thinking, if not in the preliminary injunction, then at least on the provisional remedies of the type encompassed by Rule 57 of the Puerto Rico Rules of Civil Procedure.[11]

---

8. An equivalent to the U. S. Congressional and Administrative News, the Diario de Sesiones is the official publication of the Legislature of Puerto Rico which contains the debates and reports in the House of Representatives and the Senate on drafts and bills of law.

9. Through the enactment of Law 75 the Legislature intended to protect the Puerto Rican merchant. The Legislature was moved to act by reason of the problem created when manufacturing enterprises, without "just cause", terminated their relationship with their distributors or agents. *Warner Lambert Co. v. Trib. Superior*, 101 D.P.R. 378, 387 (1973). For a complete synthesis see statement of motive of the law transcribed *infra*.

10. Joint Report to the House of Representatives rendered by the Comisiones de Planifica.ción, Comercio e Industria, y Gobiernos, on May 4, 1971. (Commissions on Planning, Commerce and Industry, and Government).

11. Rule 57 of the Puerto Rico Rules of Civil Procedure is similar to Rule 65(b) of the F.R. C.P. which governs the granting of injunctive relief. Rule 57 P.R.R.C.P. provides:
"57.1. Preliminary; notice
No preliminary injunction shall be issued without notice to the adverse party.
57.2. Temporary restraining order; notice; hearing; duration
No temporary restraining order shall be granted without notice to the adverse party

We reach this conclusion first because of the direct reference made to the federal cases in which the use of the remedy seems to be legitimized, and secondly, because of the fact that federal courts could not have granted provisional remedies with total neglect or disregard to the procedural safeguards.[12]

Therefore, although the text of Article 3–A provides that the Court may grant, during the time that the litigation is pending resolution, *any provisional remedy* or measure of an interdictory nature, said remedies had to be the ones encompassed and provided for in the law, inasmuch as through this enactment the Legislature of Puerto Rico incorporated what had been a practice of the local courts in their everyday experience.[13] Courts were not creating additional remedies, but making use of available resources and legal tools found to be compatible with the law.

Therefore, to the extent that the addition of Article 3–A to Law 75 is the incorporation of what was a judicial reality, product of the Court's task in the sacred mission of administering justice, there can be no doubt that when the law speaks of "any provisional remedy" the phrase cannot be conceived as a creation which transcends the boundaries of the imaginable, but merely a legitimation as to the availability of the existent injunctive remedies in actions arising under Law 75.

The urgency to make such classification was the product of the great number of cases involving the cancellation of distribution contracts. It has been referred that since the enactment of Law 75 in 1964 over seventy cases of this type had been initiated, with the expected loss for the Puerto Rican merchant and unemployment for a great number. See "Diario de Sesiones 1971", at 1207.

That Public Law 75 is one which embodies a strong social policy is a fact which cannot be overlooked. Moreover, the temporary relief is inextricably tied to those policies which affect the duration of the mutual obligations of the parties when they enter into the ·dealership agreement.[14]

unless it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant *before notice can be served and a hearing* had thereon. Every temporary restraining order granted without notice shall be endorsed with the date and hour of issuance; shall be filed forthwith in the clerk's office and entered on record; shall define the injury and state why it is irreparable and why the order was granted without notice; and shall expire *by its terms within such time after* entry, not to exceed 10 days, as the court fixes unless within the time so fixed the order, for good cause shown, is extended for a like period, or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for such extension shall be entered on record. In case a temporary restraining order is granted without notice, the motion for preliminary injunction shall be set down for hearing at the earliest possible time and takes precedence of all matters, except older matters *of the same character; and when the* motion comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a preliminary injunction and, if he does not do so, the court shall dissolve the temporary restraining order. Upon 2 days' notice to the party who obtained the temporary restraining order, without notice or previous notice on such shorter notice to that party as the court may prescribe, the adverse party may appear *and move its dissolution or modification* and in that event the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require."

**12.** The rule is confined to procedural matters that are intended to guard against an abuse of the remedy of injunction.

**13.** In its pertinent part the report reads in Spanish: "Los Tribunales de Puerto Rico en casos surgidos bajo las disposiciones de la Ley 75 ya citada han concedido remedios provisionales como los indicados ...". A literal translation of the foregoing reads: "The Courts of Puerto Rico in cases arising under the provisions of cited Law 75 have granted provisional remedies as the ones indicated ...". (Translation ours).

**14.** Highly persuasive is the report which the then Secretary of Justice rendered to the Commission. It is stated in this report that the remedy provided in Article 3–A *is* one of a provisional nature which would be subject to the final determination as to the existence or inexistence of "just cause" for the termination

The public policy which the statute intends to secure is evidently the protection of the Puerto Rican merchant. To these ends the incorporation of the disposition contained in Section 278(b)(1) (Article 3–A of Public Law 75), intended to clear whatever doubts existed as to the faculty of the Courts of the Commonwealth to order provisional remedies in suits involving distribution contracts. See "Diario de Sesiones 1971", at 831.

The report by the Commission of Planning and Government to which we have alluded explains the need of such remedy and the urgency for its adoption. It was argued that through an order of provisional remedy serious displaces in established commerce could be avoided, thus impeding the natural cessation of numerous jobs. Considering other benefits available through the issuance of the provisional remedy, it was further stated that the Puerto Rican distributor would be able to secure other representations. "Diario de Sesiones 1971", at 1207.

Thus, the aforementioned facts have allowed us to delve into and analyze the nature of the writ comprised in Article 3–A of Public Law 75. At this moment we could offer a response to the issue before us based on the legislative history and the judicial reality which gave rise to the incorporation of the injunctive remedy in Public Law 75, as evinced by the legislative history itself and the reports rendered on the measure by the various legislative commissions without a need to certify the matter to the Supreme Court of the Commonwealth. Therefore, to the question of whether the provisional remedies which a court may grant under Law 75 are far more ample than the injunctive relief provided for by the rules of civil procedure, we must respond with a conditioned negative.

This qualified negative response is based on the distinction that must be made between substantive and procedural aspects of the provisional remedies which we have found is required to understand the nature of the writ.

Certainly, the public policy which permeates the Act (Public Law 75) has been a factor which influences and conditions the Court's discretion in granting the remedy. The statement of motives of said law reads as follows:

"The Commonwealth of Puerto Rico can not remain indifferent to the growing number of cases in which domestic and foreign enterprises, without just cause, eliminate their dealers, concessionaries, or agents, as soon as these have created a favorable market and without taking into account their legitimate interests.

"The Legislative Assembly of Puerto Rico declares that the reasonable stability in the dealer's relationship in Puerto Rico is vital to the general economy of the country, to the public interest and to the general welfare, and in the exercise of its police power, it deems it necessary to regulate, insofar as pertinent, the field of said relationship, so as to avoid the abuse caused by certain practices."

Following this tendency and consistent with it the Court of Appeals for the First Circuit determined in the case of *De Moss v. Kelly, supra,* that "... the availability of temporary relief under Article 3–A is not tied to a showing of irreparable injury or to probability of success in the case on the merits, but rather to the policies of the Act in promoting the continuation of dealership agreements and the strict adherence to the provision of such agreements.". At 1015.

In no way said ruling implies that the provisional remedies comprised in Public Law 75 are independent from the provisions of the Rules of Civil Procedure. It has

---

of the contract. The report further states that said remedy would not be automatic, but would be granted in the Court's discretion at the time the same is deemed proper after considering the interests of the parties in the light of the public policy delineated in the statute and after the rendition of surety by the petitioner. Re-

port dated May 18, 1971, by the Honorable Blas C. Herrero, Secretary of Justice of Puerto Rico, addressed to the Honorable Orlando Vázquez Iglesias, President to the Commission of Planning, Commerce and Industry of the House of Representatives.

been extensively discussed that the Legislature evidently contemplated only a clarification as to the use of a remedy not divorced from the procedural safeguards embodied in the Rules of Civil Procedure. To hold otherwise would be, paraphrasing Judge Marshall, "Too extravant to be maintained.". *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). The fact that the burden is less stringent [15] and that what may be termed as a certain flexibility exists in granting the remedy, is not a detraction from the procedural safeguards.

The Court of Appeals for the First Circuit did not rule in the *De Moss* case that in cases under Law 75 the Rules of Civil Procedure were not applicable. The decision only ruled that the District Court had to apply the injunctive directives of the referral law which is substantive law. In this sense we have spoken of an essential distinction between that which is substantial from that which is procedural to understand the nature of the writ. Because of the fact that the Act creates a distinct standard which conditions the Court's discretion in granting the remedy, this does not mean and cannot amount to a disregard of procedural safeguards.

Once more we may argue that inasmuch as the legislation officially integrated what courts had been doing based on the interpretation as to the possibilities of the statute, it is more than evident that the Act did not intend to create a *sui generis* injunctive relief completely divorced from procedural safeguards. For the courts could not have been operating without regard to the due process rights, and also, because if the creation of such a remedy would have been intended the legislature would have so provided and a special procedure would have

been established therein delineating the particular contours of the remedy.[16]

The fact that in order to grant the remedy there has got to be a showing of irreparable injury or probability of success on the merits as solved by the Court in the *De Moss* case is not inconsistent with our holding.

We agree that as to the substantive aspect there is a special treatment in view of the interests which the Act intends to promote and the relationships it seeks to protect under the policy and the legislative intent of Law 75, but this is not inconsistent, for it cannot be, with our determination that in the procedural aspect the provisions of Rule 57 (Puerto Rico Civil Rules) govern the type of provisional remedy which the Court in its discretion and in accordance with the faculty accorded by the disposition itself may order. Therefore, we hold that in its procedural aspect Rule 57 controls the granting of the remedies embodied in Article 3–A of Law 75.

Having determined that the procedural aspects of Rule 57 are controlling in the issuance of a remedy under Article 3–A of Law 75, we now consider whether the order issued by the Superior Court complies with said requirements.

Examining the order we find that the same, granted without a hearing, and impeding defendants from distributing by themselves or through any third persons or entity their products is in reality a temporary restraining order. Rule 57.2 of the Rules of Civil Procedure provides that every temporary restraining order "... *shall expire by its terms* within such time *after entry, not to exceed 10 days*, as the court fixes unless within the time so fixed the order, for good cause shown, is extended for

---

**15.** However, we cannot presume that the provisional remedy is automatic not only because the Legislature of Puerto Rico could not have intended the courts to exercise merely the ministerial function of issuing provisional remedy upon request, but also because such conclusion would be contrary to the legislative history.

**16.** Pronouncements by the Supreme Court of Puerto Rico ratify our conclusion. It has been held that one is certainly called to search for

the legislative intent in order to make a legislative interpretation. *The People v. Del Moral, et al*, 16 P.R.R. 618, 623 (1910). Furthermore, consonant with our interpretation is the ruling that one must always attribute to the law the most logical sense that will accomplish the intended purpose of the Act. *García Commercial, Inc. v. Secretary of the Treasury*, 80 P.R.R. 739, 747 (1958).

a like period, or unless the party against whom the order is directed consents that it may be extended for a longer period.".

The decisions rendered by the Supreme Court of Puerto Rico have pointed to the need of strictly complying with the terms of the Rule.

In the case of *Arrarás v. Superior Court*, 100 P.R.R. 378 (1972) the trial court sustained a petition for a temporary restraining order, without notice to the adverse party. Commenting on the fact that hearing on the petition was set four days after the expiration of the term of ten days required by Rule 57.2, it was stated in a footnote:

"The order was entered without a fixed term despite the provisions of Rule 57.2 of the Rules of Civil Procedure of 1958 which fixes a term of ten days for the effectiveness of temporary restraining orders issued without notice to the adverse party, unless within the time so fixed, the order be extended for good cause shown, that should be entered of record or with the consent of the adverse party. (If no term is expressed, the order expires within 10 days.) Even more, the order entered having been issued for an indeterminate time, that is, under the resolution of the permanent injunction, is tantamount to a preliminary injunction which shall not be issued without notice to the adverse party...." At 381.

In *Marbarak v. Superior Court*, 93 P.R.R. 461 (1966) the Court once again stated that no temporary restraining order shall be granted for a term exceeding 10 days, which may be extended for a like period, for good cause shown, or for a longer period with the consent of the other party; that no restraining order or preliminary injunction shall issue, except upon the giving of security by the applicant in such sum as the court deems proper, for the payment of such costs and damages as may be incurred

or suffered by any party who is found to have been wrongfully enjoined or restrained.[17]

In the case of *APPR v. Superior Court*, 103 D.P.R.[18] 903 (1975) the Court resolved that a temporary restraining order issued without definite term amounts to a preliminary injunction which may not be issued without notification to the adverse party.

Having analyzed the order to determine its validity in the light of the terms under which it was issued, and considering the applicable law as interpreted by the Supreme Court of Puerto Rico, we find merit in defendant's argument to the effect that since the order of December 27, 1979, was issued for an indeterminate time, without security and without notice, it is tantamount to a preliminary injunction issue for an indeterminate time, which is contrary to the provisions of Rule 57.

Accordingly, defendant's petition to vacate the temporary restraining order issued on December 27, 1979, is hereby GRANTED.

This Court's authority to pass on the validity of the Order issued by the Superior Court is derived from the removal statute, 28 U.S.C. § 1441, et seq., and the ruling of the Supreme Court in the leading case of *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974), to the effect that

"... once a case has been removed to federal court, it is settled that federal rather than state law governs the future course of proceedings, notwithstanding state court orders issued prior to removal. Section 1450 implies as much by recognizing the district court's authority to dissolve or modify injunctions, orders, and all other proceedings had in state court prior to removal. This Court resolved this issue long ago in *Ex parte Fisk*, 113 U.S. 713, 5 S.Ct. 724, 28 L.Ed. 1117 (1885)."

---

17.  The provisions of Rule 57.3 are identical to those of Rule 65(c) of the Federal Rules of Civil Procedure.

18.  The Puerto Rico Reports' (P.R.R.) official translation of the Decisiones de Puerto Rico

(D.P.R.) were published up to Volume 100. Accordingly, cases comprised in subsequent volumes have to be directly cited from the Decisiones de Puerto Rico (D.P.R.).

The powers of federal courts over state orders in removal cases is derived from Section 1450 (and its predecessor) inasmuch as it has been provided that orders of state courts shall be in force *until dissolved or modified by the federal court* (emphasis supplied).

With an obvious reference to the applicability of the procedural safeguards of the Rules of Civil Procedure, such as durational limitations, the court in *Granny Goose* ruled that an ex parte temporary restraining order issued by a state court prior to removal remains in force after removal no longer than it would have remained in effect under state law, but in no event does the order remain in force longer than the time limitations imposed by Rule 65(b) measured from the date of removal.

Defendant finally alleges that plaintiffs have no cause of action under Law 75 in view that the contractual relationship existed prior to the enactment of Law 75. *Warner Lambert Co. v. Tribunal Superior*, 101 D.P.R. 378 (1973). However, since the issue presents a controversy directed to the merits of the case, the same shall not be considered by the Court at this stage.

IT IS SO ORDERED.