LOCAL No. 1, AMALGAMATED LITHOGRAPHERS OF AMERICA, by EDWARD SWAYDUCK, President, Respondent, v. KENNETH J. BROWN, Individually and as President of the Amalgamated Lithographers of America, et al., Appellants, and EDWARD SWAYDUCK et al., as Trustees of the Pension Fund of Local No. 1, Amalgamated Lithographers of America, et al., Respondents.

First Department, June 14, 1966.

*Ernest Fleischman* of counsel (*Carl Slater, Ralph P. Katz* and *Emanuel H. Reichart* with him on the brief; *Delson & Gordon,* attorneys), for appellants.

*Benjamin M. Robinson* of counsel (*Matthew Silverman* with him on the brief; *Robinson, Silverman, Pearce, Aronsohn & Sand,* attorneys), for Trustees of the Pension Fund of Local No. 1, Amalgamated Lithographers of America, respondents.

*Daniel Arvan* for Edward Swayduck and others, respondents.

*Simon H. Rifkind* of counsel (*H. Russell Winokur* and *Allan Blumstein* with him on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for Local No. 1, Amalgamated Lithographers of America, respondent.

STEVENS, J. This is an action by Local No. 1, Amalgamated Lithographers of America (Local 1) against Kenneth J. Brown and Donald W. Stone, individually and as president and secretary-treasurer, respectively, of the Amalgamated Lithographers of America (Amalgamated) for a declaratory judgment. Local 1 seeks a declaration that it has a right to sever its connection with Amalgamated and not become a part of a new organization resulting from a merger between Amalgamated and International Photoengravers Union of North America. It also sought a declaration that certain funds, moneys and property were exclusively the property of Local 1. In particular it sought a declaration that Amalgamated had no right, title or interest of any kind in certain funds and property. A motion by Amalgamated to dismiss the complaint on the ground that no justiciable controversy existed because the proposed merger might never be consummated was denied. Subsequently Local 1 moved for partial summary judgment. Special Term, applying the "frustration of purpose" doctrine, granted plaintiff's motion for partial summary judgment to the extent of holding that Local 1 had the right to sever its connection so as not to

become a part of the merged organization and that Amalgamated had no right, title or interest in the several funds above referred to. The balance of the action was severed.

Amalgamated appeals only from that part of the judgment entered February 9, 1965 which declared that plaintiff Local 1 had the right to sever its connection with Amalgamated and that Amalgamated had no right, title, interest or claim of any kind whatever in the general fund, the strike organizing and relief fund of Local 1 and Amalithone Realty Corp.

Amalgamated asserts that certain fact issues exist which preclude the granting of partial summary judgment; that in granting such motion Special Term abandoned the recognized principle that the constitution of a labor union is a contract among the members and between the local and international, and erred when it permitted the withdrawing members of Local 1 to claim title to the funds and assets of Local 1, rather than declaring such funds and assets should remain in the hands of those members of Local 1 who retain their affiliation with Amalgamated. Amalgamated urges that the "frustration of purpose" doctrine has no application to the facts of this case, and that the court's refusal to permit disclosure pursuant to CPLR 3212 (subd. [f]) was unjustified and an abuse of discretion.

At the time of the institution of this action Amalgamated was comprised of approximately 40,000 members, of whom approximately 8,500 were members of Local 1. Amalgamated was the highest tribunal for working people in the lithographic industry, having as its object the protection of the individual and collective trade interests of its members, the regulating and advancing of the interests of lithography and similar aims. Basically (prior to merger), it seems to have been a federation of local unions. It was organized sometime about 1915. The record indicates that Local 1's earliest predecessor was organized in 1882. Under the constitution of Amalgamated a per capita tax is paid by each local which is deposited in the general fund of Amalgamated. Amalgamated's emergency fund and its mortuary fund are also derived from member assessments collected through the various locals.

The funds involved in this appeal are the general fund of Local 1, the strike, organizing and relief fund, and Amalithone Realty Corp. Local 1 through its members is the owner of a building located at 113 University Place, Borough of Manhattan, title to which is in the name of Amalithone Realty Corp., the stock of which is held by trustees elected by Local 1. The building was purchased solely with funds of Local 1.

The general fund of Local 1 is made up entirely of dues, initiation fees, assessments and fines from members of the local. It is the general working fund of the local from which all expenditures of the local are made.

The strike, organizing and relief fund is established and maintained by Local 1, separate and apart from all other funds and is used to pay strike and unemployment benefits, and to afford special relief in special cases to needy members.

Both funds of Local 1 as well as the property, title to which is in Amalithone Realty Corp., were financed entirely by assessments or contributions from members of Local 1 or their employers. Amalgamated contributed nothing to their creation or existence. In equity and justice then it would seem that these properly belong to Local 1 unless there is some provision in the constitution of Amalgamated to which Local 1 subscribed, and which would vest title in Amalgamated, or unless Local 1 holds such property as a trustee for the wider membership of Amalgamated.

Examination of the constitution of Amalgamated reveals one section which deals directly with Local funds. Under section 4 of article 29 it is provided: "In the event of dissolution of a Local by its members severing their membership in such numbers that the Local ceases to exist as a Local, all funds in the Local treasury are to be held in trust by the International Association until such time as the affected Local can again be put on a proper basis to function as a Local." The contingency there contemplated, i.e., severance of majority membership, has not occurred so there is no trust created. It is interesting to note, however, that when Amalgamated does serve as trustee through dissolution, it is as trustee for the local until revitalization, and it does not take legal title for the benefit of the membership of Amalgamated as a whole.

Section 6 of article 29 mandates that Amalgamated shall dissolve a local when its members fall below 10 and transfer the members thereof to membership in the local nearest to them. Presumably the assets would fall under a trusteeship referred to in section 4, though section 6 does not so state. It is concluded there is no provision in the constitution of Amalgamated which would forfeit the assets of Local 1, to Amalgamated upon withdrawal.

The problems here involved arose because of a proposed merger between Amalgamated and the International Photoengravers Union of North America. The membership of Local 1 is virtually unanimous in opposition to the merger which in fact has taken place since the institution of this action.

Local 1 urges that the merger would result in a fundamental change in purpose and structure, that there would be a loss of local autonomy heretofore enjoyed by the various locals of Amalgamated, and that the merged organization would have powers not now possessed by Amalgamated including authority to revoke a local's charter. There are no charges of fraud and corruption on the part of Amalgamated or Local 1 involved here.

With that brief background we turn to the fundamental question posed by this case. Has Local 1 the right to withdraw from Amalgamated and, if so, is it entitled to take with it the assets in issue? The measure of the Local's obligation and the nature of its relationship to Amalgamated, the international, should be contained in the constitution of Amalgamated. Examination of that document reveals there is no provision which prohibits withdrawal of a local union, or which calls for a forfeiture of funds upon withdrawal. Thus the general principle that a local may not withdraw from a national union from which it has received a charter, except in the manner provided in the constitution of the national union, has no application (32 N. Y. Jur., Labor and Labor Relations, § 122; *Brownfield* v. *Simon,* 94 Misc. 720, affd. 174 App. Div. 872, affd. 225 N. Y. 643). The locals of Amalgamated are self-governing in their local affairs, and the members are members of the local body and through it are members of Amalgamated which, in turn, is governed through locals and through its international council.

There are substantial differences between the constitution of Amalgamated and the constitution of the merged organization, the Lithographers and Photoengravers International Union (LPIU). The object of LPIU includes the bringing within the ranks of its membership of "all workers in the graphic arts who are engaged in the trades, occupations and work processes falling within its jurisdiction", an area much broader in scope than that envisioned by the constitution of Amalgamated. LPIU has the power to issue and recall charters of locals, the by-laws of which cannot be inconsistent with the constitution and laws of LPIU. LPIU has the power to suspend or expel a local, and it is "a constitutional condition of the charter of each Local that upon its expulsion from the International or the surrender of its charter, all properties, assets and powers held or administered by it shall forthwith automatically vest in the International." The purported status of the Local with respect to property is not that of owner in fee, but that of a trustee for the International. Nor can a

local surrender its charter so long as seven members dissent from such action.

The right of a local to disaffiliate from the parent union where fraud or corruption or subversive activity is involved is now well recognized. Many of the decisions speak of a condition of continuing affiliation between the international and a federation of national unions as a particular condition of the contract between the local and the international which could bind or release the local from further obligation. And this is true even though the international constitution contains a provision forbidding disaffiliation so long as a specified number, usually small, dissent from disaffiliation (*Crawford* v. *Newman,* 13 Misc 2d 198, affd. 8 A D 2d 789, affd. 10 N Y 2d 865; *Clark* v. *Fitzgerald,* 197 Misc. 355). In *Bradley* v. *O'Hare* (11 A D 2d 15), there is an extended discussion and complete research of the problem of disaffiliating locals and disposition of assets held by such locals. In that case Mr. Justice BREITEL points out (p. 26): "Notably, in every one of the implied condition [or frustration of purpose] cases, widespread corruption or subversion was the ground for expulsion of the international from the federation. In some of the cases the court rested its holding solely on the disaffiliation of the international from the federation; in others it was held that the disaffiliation and the corruption or subversion justified secession by the local and retention of the assets by the local". In the case before us neither expulsion, corruption nor subversion is present or charged here. Nor is continued affiliation with a national federation involved. An extension of the frustration of purpose doctrine to apply it to the facts of this case would be both unwarranted and unwise. (See 32 N. Y. Jur., Labor and Labor Relations, § 126.) Let us look instead to ascertain the seat of the beneficial interest (*Bradley* v. *O'Hare, supra,* p. 27).

Since the constitution of Amalgamated makes no provision for forfeiture of the assets of a local in the event of dissolution but merely provides for a trusteeship by Amalgamated, and since there is no prohibition or disaffiliation, there being no question that the assets were created for special purposes by the members of Local 1, we may safely conclude that the beneficial owners of the assets of Local 1 are its members. Thus withdrawal would not deprive Amalgamated of benefits created by it, or to which it has made a direct substantial contribution. That there might have been an incidental benefit from association as an affiliate would hardly be gainsaid, but such benefit cannot be controlling. The organization theory that the international expanded its assets by creating and building up the

local, so that all of the members of the international have an interest in the local and its assets which should be used for the benefit of all, has no application here.

A second question following upon the determination of the seat of the beneficial interest is how may that interest be best served? (*Bradley* v. *O'Hare, supra,* p. 27.) As noted earlier the question is not may a local disaffiliate, but may *this* local disaffiliate? There are facts and circumstances here present which are not usually encountered. The existence of Local 1 antedated that of Amalgamated by many years. That fact, however, is not dispositive (cf. *Alexion* v. *Hollingsworth,* 289 N. Y. 91), though it is accorded some weight in light of the nature of the association developed in the formation of Amalgamated. Local 1 remained autonomous. While there are provisions in the constitution of Amalgamated for suspension of locals, there are no such provisions for expulsion of locals, though individual members may be expelled. Such a provision does not authorize expulsion of a local (*Schrank* v. *Brown,* 192 Misc. 603). All of the members of Local 1 have an undivided interest in its assets (see *Bradley* v. *O'Hare, supra,* p. 28; 7 C. J. S., Associations, § 14). These were special funds, collected under local direction for a local purpose (32 N. Y. Jur., Labor and Labor Relations, § 127; cf. *State Council Junior Order United Amer. Mechanics* v. *Emery,* 219 Pa. 461).

Considering the history of Local 1, the history of Amalgamated as reflected in the record, the constitution of Amalgamated, the by-laws of Local 1, the fact that Local 1 seems always, in effect, to have retained its character as a separate voluntary association, an identity it would lose by compulsory merger, considering as well the constitution of LPIU, it is concluded there is no barrier to disaffiliation by Local 1. The seat of the beneficial interest of the assets in issue, as well as the source of their creation is in the membership of Local 1. The purpose for which such funds are committed is the advancement and welfare of the membership of Local 1. Applying equitable principles it is fair and just that ownership be retained with the disaffiliating members of the local. (*Bradley* v. *O'Hare, supra; Hayes* v. *Relyea,* 43 Misc 2d 295.)

The judgment appealed from should be affirmed, with costs and disbursements to respondents.

BREITEL, J. P., MCNALLY and EAGER, JJ., concur.

Order and judgment (one paper) unanimously affirmed, with $50 costs and disbursements to the respondents.