Edgar M. SANDERS, as General Secretary Treasurer of Journeymen Barbers, Hairdressers, Cosmetologists and Proprietors International Union of America, AFL–CIO, Plaintiff,

v.

Daniel DE LUCIA and Adolph Rosenbaum, individually and as President and Secretary Treasurer, respectively, of Barbers, Hairdressers and Beauty Culturists Union, Independent, Local 1, Anthony Franco and Joseph Visconti, individually and as President and Secretary Treasurer, respectively of Barbers, Hairstylists and Beauty Culturists Union, Independent, Local 2, Louis Palude and George Pelletiere, individually and as President and Secretary Treasurer, respectively of Barber, Hairstylists and Beauty Culturists Union, Independent, Local 3, and John Restivo and Ben Carbone, individually and as President and Secretary Treasurer respectively, of Barbers, Hairstylists and Beauty Culturists Union, Independent, Local 4, Defendants.

No. 67 Civ. 1194.

United States District Court
S. D. New York.

May 1, 1967.

Benjamin Wyle, New York City, for plaintiff.

Sipser, Weinstock & Weinmann, New York City, for defendants. I. Philip Sipser, Belle Harper, New York City, of counsel.

## OPINION

FRANKEL, District Judge.

The plaintiff International Union brings this action against four local unions and named officers of the Locals, seeking $1,000,000 in damages and an injunctive decree that would wipe out the latter organizations. The lawsuit, begun in state court and removed to this court under jurisdiction undisputedly conferred by § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, and 28 U.S.C. § 1337,[1] grows out of the secession of the defendant Locals from the International in February of this year. Plaintiff has moved for a preliminary injunction which would in essence accomplish the purpose of the final decree by forbidding the defendants to

(1) use their funds and other property;

(2) administer their collective bargaining agreements;

(3) collect dues from local members; and

(4) in the case of two defendant organizations, Locals 1 and 3, continue using their numerical appellations.[2]

In addition, there is a prayer that the individual defendants be enjoined from representing themselves as officers of the International or of locals affiliated with the International.

The asserted basis for the action and for the preliminary relief now sought may be summarized from the supporting affidavit of Joseph Pelligra, plaintiff's Vice-President, whose abortive role as trustee of defendant Locals is a matter of interest treated below. According to Mr. Pelligra, charges against defendants were filed with the International by its President on January 4, 1967, asserting

---

1. See Local 33, Int. Hod Carriers Bldg. & Common Laborers' Union of America v. Mason Tenders, 291 F.2d 496, 501–502 (2d Cir. 1961).

2. The summary in the text states in a shorthand way a detailed prayer which would effectively paralyze the local union defendants.

that the Locals had not paid their per capita tax to the International; that the Locals' affairs were being mismanaged; that the "local unions and their principal officers failed to follow democratic procedures;" and that defendants had misbehaved in a variety of other ways. It is unnecessary to set out the charges at length. The affiant tenders no proof of them, and plaintiff says they "should not be litigated in this proceeding upon this application for a temporary injunction to which the plaintiff International Union is clearly entitled under the provisions of the Constitution of the organization to which all the parties are bound."[3] Two days after the charges were "filed" (but, from the silence of Pelligra and the unequivocal statement in an answering affidavit for defendants, well before they were served) Mr. Pelligra was appointed trustee of the Locals by plaintiff's President. After reporting this appointment at page 4 of his affidavit, Mr. Pelligra turns to other subjects, which we postpone briefly to quote here the only further things he says about this subject, at pages 6 and 7 of the affidavit:

"These defendants before their acts of disaffiliation attempted to avoid the consequence of their malfeasance by instituting an action in the New York Supreme Court against the plaintiff International and your deponent, as Trustee of these local unions, seeking to enjoin us from interfering with said local unions and continuing the trusteeship. That suit was removed to this Court. No further action has been taken in that case apparently because the local unions then seceded thus preventing your deponent, the Trustee, from carrying out his duties as the Trustee of local unions affiliated with the plaintiff International."

The International's hearings on the charges of January 4, 1967, were set for various dates in March. Defendants did not appear. Instead, meetings of the Locals were called in February at which secession from the International was voted. Since then, Mr. Pelligra states,

"it has come to my attention that * * * the individual defendants have been and are continuing to visit employers with whom the plaintiff International through its chartered local unions are in contractual relationship and are seeking to induce these employers to execute an instrument whereby the name of the International local union as a contracting party to the collective bargaining agreement, is changed to that of one of the defendant organizations."

In addition, Mr. Pelligra states that he

"has been informed that in a number of instances said agreements were executed by employers upon the fraudulent misrepresentation by representatives of the defendant Local 1 and Local 3 that said organizations are the same International affiliated local unions with which employers have been bargaining over the years. Other employers have been threatened with strikes, boycotts and picketing unless they executed the aforesaid stipulation, despite the fact that said employers were in contractual relationship with the plaintiff International and its local unions."

(There is no affidavit from any employer.)

Mr. Pelligra then proceeds to what is evidently plaintiff's central objective in the litigation. He quotes Article X, section 2, of the International's Constitution, which is conceded to have been in effect at all material times, and for a significant period antedating the events this affiant relates:

"If any local union or guild is suspended by reason of any violation of laws of the International Union, or suspends active operation of its own accord, all moneys, books, seal and property must be forwarded to the General Secretary-Treasurer of the International Union. The local union

---

3. Reply affidavit of Robert E. Shuff, plaintiff's General Counsel, pp. 3–4.

or guild secretary-treasurer shall be held responsible for the faithful transmission of all the property in said secretary-treasurer's possession to the General Secretary-Treasurer of the International Union. For any violation or non-compliance with this section, the officers shall be refused all cards or books of admission to any union until all such property, or the value thereof, is restored into the hands of the General Secretary-Treasurer and if possible, shall procure the punishment at law of the guilty persons for illegally withholding the property of the International Union."

Claiming under the quoted language, plaintiff has demanded, and defendants have refused to deliver, the property and books of defendant Locals, except that the Locals have returned to the International their charters and seals.[4] Accordingly, plaintiff urges, the preliminary injunction it seeks should strip from defendants their files, lists, bank books, "and any and all other property of said plaintiff International, its former affiliated local unions, 1, 3, 11 and 657 and/or the defendant Locals in said defendants' possession or control."

Adding to his charges, Mr. Pelligra says the individual defendants are "attempting and are succeeding in persuading employees to cease being members of Locals of the plaintiff International and join the defendant organizations." The Locals, he charges, are collecting dues by check-off "in violation of the agreements between the employers and the International Union through its local unions." He says, further, that the individual defendants have "falsely represented themselves to be duly constituted representatives of the employees and have falsely represented to the employees of such employers that they are required to be members of the defendant organizations if they wish continued Union representation." Finally, he says, Locals 1 and 3, by keeping their former numbers (the other two defendant Locals have changed theirs), are in this way furthering a pattern of misrepresentation and deception.

If it stood alone, Mr. Pelligra's affidavit—replete with ambiguities, conclusions, and hearsay—would be at best a dubious basis for any temporary injunctive relief, let alone the devastating order plaintiff seeks. But this single affidavit supporting the motion does not stand alone. It is met with sworn, detailed, and essentially uncontradicted statements which give the particulars Mr. Pelligra omits and the context of his conclusory charges. The result is not to create any significant issues of fact; it is to show that on a fuller account, and in the light of some fairly rudimentary law, plaintiff is not entitled to any injunctive relief at this preliminary stage of the case.

The opposing affidavit for defendants, made by defendant Adolph Rosenbaum, Secretary Treasurer of defendant Local 1, cures numerous omissions from the Pelligra affidavit, including some pertinent history. It shows, to begin with, that the defendant Locals have existed as substantially continuous organizations for over 30 years. Before 1937 they were affiliated with plaintiff International. They seceded in 1937, as they have now done again after reaffiliating in 1956. The interesting point of this is that the International Constitution was the same in pertinent respects in 1937 as it is now, and no suggestion was made at the time of the prior disaffiliation that the International could take over the property and functions of the Locals.

Throughout their history, whether affiliated or not, the Locals have preserved a substantial measure of autonomy. The International Constitution, supplied in full by defendants as against the brief abstracts plaintiff submitted, is replete with confirmations of this status. It declares (Art. XI, sec. 2) that "[a]ll moneys collected by the local union or employers' guild for dues, * * * etc., except, however, fines or

4. Local 1 reported that its charter was lost.

assessments imposed by the International Union * * *, shall be the property of the local union * * *." It recognizes and confirms the possession by local executive boards of "full and complete charge of all business of the union" between regular membership meetings. Id., sec. 4. It recognizes that it is for the local unions, not the International, to "regulate the hours of labor, prices and wages in their respective locality * * *." Art. XV, sec. 5.

Acting in accordance with the Constitution, defendant Locals, not the International, have served as collective bargaining representatives and have signed and administered collective agreements over the years. The International is not a party to these agreements. This clarifies, though it cannot justify, the repeated use by Mr. Pelligra of such artful ambiguities as "employers with whom the plaintiff International *through its chartered local unions* are [*sic*] in contractual relationship * * *." [5] The papers on file make it plain that the International is in no meaningful sense "in contractual relationship" with the employers.

It is likewise clear that the money and property plaintiff seeks to take from the Locals came from the local membership, not from the International.

The papers also leave it undisputed that the members of defendant Locals (or overwhelming majorities of them) met and determined, by unaminous votes of those attending, that the affiliation with plaintiff should be ended. Thereafter, to confirm rather than conceal the disaffiliation, the Locals sought and obtained new documents from the employers, showing the changed union designations. This served in a familiar way to implement the familiar provision of the subsisting collective agreements that they would be "binding upon the parties * * *, their successors in interest," etc. It is the continuation of these basically unchanged Locals, as parties to their unchanged contracts, to which Mr. Pelligra evidently refers when he accuses defendants of "executing collective bargaining agreements with employers with whom the plaintiff International *through its local unions* have [*sic*] contracts * * *." [6]

The case for plaintiff is not helped in this aspect by the reply affidavit of its General Counsel. He states that the International has "transferred, merged and consolidated" the "jurisdiction, membership and collective bargaining agreements" of defendant Locals to other Locals.[7] Repeating this thought in detail, he further pronounces that "the members of the seceding Local Unions have been transferred to other existing chartered Local Unions of the International Union who are prepared to and are willing to administer the collective bargaining agreements and represent the employees * * *." [8] A busy court may perhaps be forgiven for not tarrying over the hornbook principles of contract and labor law that demonstrate the lawless futility of these asserted claims of power to "transfer" people, their contracts, and their statutory right to representatives of their own choosing.

Explaining the trusteeship and the litigation attending it—about which the proposed trustee and affiant, Pelligra, is so cryptic—defendants show the background of disputation leading to plaintiff's attempted installation of the trustees. It is not necessary to detail these matters here, except to note that one bone of contention was an attempt by plaintiff to "merge" defendant Locals despite their opposition. It is sufficient for the present motion to note just these facts:

(1) There is no provision in defendant's Constitution or in any by-laws for its appointment of a trustee.

---

5. Pelligra affidavit, p. 6 (emphasis added).

6. Pelligra affidavit, p. 8 (emphasis added).

7. Shuff affidavit, p. 1.

8. Id., p. 2.

(2) As Mr. Pelligra says, defendants did bring an action in the New York Supreme Court, removed to this court (67 Civ. 519), to enjoin the Trustee from functioning. He is also correct when he says "[n]o further action has been taken in that case * * *." He slides, however, into wishful and misleading speculation when he completes the last-quoted sentence by saying the inaction in the case against his trusteeship is probably explained by the fact that "the local unions then seceded thus preventing your deponent, the Trustee, from carrying out his duties * * *."[9] He omits a seemingly pertinent fact, acknowledged in the reply affidavit for plaintiff—namely, that a motion for a preliminary injunction against his trusteeship has been adjourned indefinitely upon a stipulation of the parties that the International and the trustee "will not deprive the plaintiffs local unions [defendants here] of their control of their respective funds, property, contracts and affairs * * *."[10]

It might be questioned, if it were necessary, whether the instant lawsuit and motion are barred by that stipulation alone. But it suffices to say that the International, for the present and indefinite future, has effectively acknowledged its impotence to impose the trusteeship.

One or two further facts, undisputed in the papers, should be added. As to the allegedly misleading numbers used in their names by Locals 1 and 3, these have been their numerical designations over the many years of their existence, through their non-affiliation, affiliation, and two disaffiliations from the International. As to the bald charges of misrepresentation, there is no suggestion of any source of credible evidence to support them. On the contrary, exhibits tendered by plaintiff itself show that the Locals are taking pains to announce and record their separateness from the International and to form a new parent body. It is this, quite obviously, rather than any supposed "passing off" as International affiliates, which has elicited plaintiff's assault.

The foregoing account should be sufficient to show the groundlessness of plaintiff's claim for a preliminary injunction. There may be some utility, however, in listing the reasons for the court's conclusion:

1. The substantially undisputed facts tend powerfully to show that plaintiff comes here with unclean hands. This hoary notion has pointed application in this case. Everything before the court supports the conclusion that plaintiff's attempt to fasten a trustee upon the Locals in place of their elected officers was unlawful under Section 302 of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 462. The statute allows trusteeships to "be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization * * *." Plaintiff can point to no such authority for its action. If the legality of the trusteeship were up for final decision, the issue would be resolved for defendants. United Brotherhood of Carpenters and Joiners of America v. Brown, 343 F.2d 872, 882–884 (10th Cir. 1965).

In any event, from what now appears, the naming of a trustee, the act of war leading to this litigation, was abrupt, high-handed, and unfounded. By the stipulation mentioned above, plaintiff has chosen to postpone indefinitely its opportunity to press for a contrary conclusion in another case pending here. Nevertheless, its papers on this motion, as noted earlier, proclaim a continued insistence upon lawless powers to "transfer," merge, and override members, local unions, contract rights, and statutory prescriptions governing the authority of elected representatives in collective bargaining. All in all, it appears that plain-

---

9. Pelligra affidavit, p. 7.

10. Shuff affidavit, p. 4.

tiff, not defendants, has been flouting the law.

2. Plaintiff's theory supporting its claimed right to take away the property of the Locals portends at best only a slim probability of success. The constitutional provision plaintiff invokes provides for transfer of local union property when a Local is "suspended * * * or suspends active operation of its own accord * * *." The words do not apply literally where a Local "disaffiliates" rather than "suspends," and there is no barrier in the Constitution to the secession and continued functioning of an intact local.

That much is obviously not conclusive against plaintiff, which points out that a local could aways avoid "suspension" by hasty disaffiliation. But there are further, higher obstacles to plaintiff's claim. For one thing, the parties long ago followed the sensible construction defendants urge; plaintiff made no claim like the present one when the same Locals disaffiliated, in the face of the same constitutional provision, thirty years ago.

Still more importantly, granting that the words of the provision may leave room for argument, the court—especially in the exercise of the equitable powers to which plaintiff appeals—would probably not enforce the result plaintiff seeks. The money and property in question come from the members of the Locals, who have voted to disaffiliate, who have remained with, and continue to be represented by, their essentially unchanged organizations. Cf. Carpinteria Lemon Ass'n v. National Labor Relations Board, 240 F.2d 554 (9th Cir. 1956), cert. denied, 354 U.S. 909, 77 S.Ct. 1295, 1 L.Ed.2d 1427 (1957); National Labor Relations Board v. Harris-Woodson Co., Inc., 179 F.2d 720 (4th Cir. 1950). The secession was caused by the arbitrary and unfounded efforts of the International to oust the officers elected by the members and take over the local organizations. In such circumstances, the result plaintiff seeks would achieve an unthinkable and impermissible forfeiture. Cf. Bradley v. O'Hare, 11 A.D. 2d 15, 202 N.Y.S.2d 141 (1st Dep't 1960), where Judge Breitel reviewed and advanced the learning with characteristic insight; Local #1, Amalgamated Lithographers of America v. Brown, 26 A.D.2d 90, 270 N.Y.S.2d 891 (1st Dep't 1966).[11]

The case might stand differently if there were splits within the locals, with warring factions contending for their treasuries, pre-existing contracts, and powers. But there is no showing of any such thing and no suggested justification for destroying the defendant organizations by way of "preliminary" relief.

3. As already stated, plaintiff's claims of fraud, misrepresentation, and coercion are unsupported conclusions. They appear now to be false. At best, there is little or no indicated probability that they will prevail.

4. Plaintiff loses on a balancing of the equities. Cf. Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 742–743 (2d Cir. 1953). It shows no hurt to itself remotely approaching in magnitude the death sentence, *pendente lite*, for which its motion prays.

The motion for a preliminary injunction is denied.

It is so ordered.

11. The parties and the court are in agreement that the case is governed by federal law. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). It is equally unquestioned that the court may appropriately seek guidance from the wisdom of the state courts. Id. at 457, 77 S.Ct. 912.