**INTERNATIONAL UNION, ALLIED INDUSTRIAL WORKERS OF AMERICA, AFL–CIO, and George Skelton, Dominick D'Ambrosio, Lyle Daugherty and Dennis Lezier, Plaintiffs, Counterdefendants, Appellants,**

v.

**LOCAL UNION NO. 589, ALLIED INDUSTRIAL WORKERS OF AMERICA, AFL–CIO and Nancy Edgell and Karen S. Nuttle, Defendants, Counterplaintiffs, Appellees.**

No. 82–1126.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 1, 1982.

Decided Nov. 22, 1982.

Matthew R. Robbins, Goldberg, Previant, Uelmen, Gratz, Miller & Brueggeman, S.C., Milwaukee, Wis., for plaintiffs, counterdefendants, appellants.

Sharon R. Merriman, Cummings & Merriman, Indianapolis, Ind., for defendants, counterplaintiffs, appellees.

Before BAUER, COFFEY, Circuit Judges, and BONSAL,* Senior District Judge.

PER CURIAM.

The International Union, Allied Industrial Workers of America and George Skelton, appointed by the International to administer Local Union No. 589 (Local), brought this action under the Labor-Management Relations Act of 1947, as amended, 29 U.S.C. § 185(a). Plaintiffs alleged that the Local was preventing Skelton from carrying out his administrative duties by refusing to relinquish control of its books and records and by interfering with the collective bargaining and grievance procedures. The district court held that the International was guilty of bad faith in assuming control over the Local and ordered the trusteeship imposed by the International dissolved. In entering its order the district court thoroughly and carefully analyzed all the issues raised in this appeal. Accordingly, we affirm and adopt the excellent opinion of the district court, which is reprinted below.

MEMORANDUM OF DECISION AND JUDGMENT ORDER

On June 29, 1981, plaintiff International Union, Allied Industrial Workers, appointed its regional representative, plaintiff George Skelton, as administrator of defendant Local Union No. 589, Allied Industrial Workers, with instructions to govern the local union subject to the supervision of the president of the international union. When the officers and members of Local 589 offered some resistance to the appointment of the administrator, the international union and administrator Skelton commenced this action under 29 U.S.C. § 185(a) against Local 589 and the local union's president, Nancy Edgell and secretary/treasurer, Karen Nuttle, alleging violations of the international union's constitution and requesting preliminary and permanent injunctive relief.

On August 26, 1981, defendants filed a counterclaim (denominated "Complaint") pursuant to 29 U.S.C. § 464 seeking to free the local union from the administrator's control. On August 27, 1981, plaintiffs filed a motion to strike, or in the alternative, to stay consideration of the counterclaim.

The cause came on for trial to the court on August 28, 1981 on the issues raised by plaintiffs' complaint. Trial on the merits was advanced and consolidated with the hearing on plaintiffs' request for preliminary injunction. Immediately prior to the commencement of the trial, this court indicated on the record in open court that consideration of defendants' counterclaim would be stayed because it had been filed only two days before the trial and because it appeared that two of the parties named as counterdefendants had not been served with copies of the counterclaim at that time. On September 17, 1981, more than two weeks after the trial, plaintiffs filed a motion pursuant to Fed.R.Civ.Proc. 25(c) seeking to substitute one Dennis Leazier as

* The Honorable Dudley B. Bonsal, Senior Judge of the United States District Court for the Southern District of New York, is sitting by designation.

a party plaintiff in place of George Skelton. While decision on the August 28, 1981 trial was under advisement, an evidentiary hearing was held on November 9, 1981 for consideration of issues relating to the motion for substitution of parties.

On the basis of the evidence adduced at trial, together with the evidence presented at the November 9, 1981 hearing, the court has concluded that all of plaintiffs' claims for relief, with the exception of the claim for unpaid percapita tax, must be denied. The court has further concluded that the international union's direct control of Local 589 by means of the administrator must be terminated. Pursuant to the motion for substitution of parties, Dennis Leazier will be joined as a plaintiff in this action. This memorandum of decision and order shall constitute the court's findings of fact and conclusions of law in accordance with Fed. R.Civ.Proc. 52.

## I. BACKGROUND

Plaintiff international union is a "labor organization representing employees in an industry affecting commerce" within the meaning of the federal labor statutes. Defendant Local 589 is also a "labor organization representing employees in an industry affecting commerce." As a subordinate body of the international union, the local is subject to the provisions of the international union's constitution.

Local 589 is the bargaining representative for the employees at the Pines of America plant in Fort Wayne, Indiana. At least until the action of the administrator in removing them, defendant Nancy Edgell was the duly elected president of the local union and defendant Karen Nuttle was its secretary/treasurer.

Employing what is known as a "checkoff" system, the employer, Pines of America, withholds the local union's dues from each member's pay and remits the dues to the local union. Under the international union's constitution, the local, in turn, is required to pay the international a fixed sum each month for each working member of the local; these monthly payments are known as the "percapita" tax, and are payable on or before the fifteenth day of the following month.

In 1979, the membership of Local 589 voted to suspend the percapita payments because of reports that the international union's regional director for the region encompassing Local 589 had misappropriated union funds. The local made no further percapita payments during the remainder of 1979 and throughout 1980.

Each local union is advised and assisted by a "regional representative" of the international union who typically is assigned to several locals in a given area. The duties of a regional representative with respect to each local union include administering grievance procedures and supervising collective bargaining. From 1975 to 1980, Mary Gildea served as the regional representative for Local 589 and discharged her duties to the satisfaction of the local's membership. In December of 1980, Mary Gildea was replaced by George Skelton. Skelton is the father-in-law of Phil Ley, the assistant plant manager at the Pines of America plant. Given his management position with the employer, Mr. Ley is frequently the subject of employee grievances. Hence, upon assuming the regional representative's duties in supervising Local 589's grievance procedures, Mr. Skelton potentially would be called upon to render guidance and support in relation to grievances arising out of disputes between members of Local 589 and his son-in-law, Mr. Ley. The members of Local 589, therefore, viewed the relationship between their new regional representative, Skelton, and their employer's assistant plant manager as posing a serious conflict of interest.

After learning of Skelton's appointment, the members of Local 589 voted to continue the suspension of percapita payments as a protest against Skelton's apparent conflict of interest.

When Mr. Skelton appeared at the local union's December, 1980, monthly meeting, a majority of the members objected to his presence because of the conflict-of-interest

issue. Defendant Edgell, the local's elected president, asked Skelton to leave. When Skelton refused to depart, the members voted to adjourn the meeting. Afterward, Edgell telephoned Dominick D'Ambrosio, president of the international, and told him of the opposition to Skelton, explaining that it derived from the perceived conflict of interest inherent in Skelton's relationship to the employer's assistant plant manager. Although President D'Ambrosio promised to look into the matter and report back to Edgell, he failed to report back to Edgell concerning the dissatisfaction with Skelton.

Receiving no response from the international union, the members and officers of Local 589 refused to allow Skelton to attend grievance sessions and local union meetings and generally declined to cooperate with him.

In a letter dated February 13, 1981, the treasurer of the international union notified Local 589 that it was in arrears on percapita payments for the period from August 1979 to December 1980. Although this letter indicated in general terms that payment of percapita was required by the union constitution,[1] it failed to specify any adverse consequences for nonpayment of percapita.

After receiving the notice of percapita arrears, the members of Local 589 voted to pay the percapita to and including June of 1980.[2] During the first week of June 1981, defendant Karen Nuttle, acting on behalf of Local 589, tendered a check to the international union for the percapita taxes through June of 1980. The check, which was inadvertently dated "1980" instead of "1981," was never cashed. The international union never deposited the check and has made no effort to return it to Local 589 for correction, if any was in fact necessary.

On June 29, 1981, without any advance notice to defendants, President D'Ambrosio appointed George Skelton to be the administrator of Local 589. Skelton was instructed to take custody of all books, records, papers and properties of the local, and to administer its affairs. Upon his appointment as administrator, Skelton made demand on defendants Edgell and Nuttle for possession of the local union's office, together with all books, documents, papers, properties, funds, assets and effects of the local. Edgell and Nuttle have refused Skelton's demands.

Skelton subsequently made arrangements to freeze the local's operating accounts at the Anthony Wayne Bank, in Fort Wayne, and to establish a separate bank account for the local union under his control as administrator. The employer's dues-checkoff payments are now being remitted to the new bank account controlled by the administrator. In addition, Skelton replaced the local's duly-elected officers, including defendants Edgell and Nuttle, with a slate of temporary officers elected by him.

Defendants subsequently asked the international union to reconsider its action in placing Local 589 under an administrator. The international union eventually held a hearing on the request for reconsideration in the early part of September 1981. The record of the hearing has been forwarded to the executive committee of the international union for review. At the time of the November 9, 1981 evidentiary hearing, there had been no final decision on the request for reconsideration.

On July 27, 1981, pursuant to the plaintiffs' application for a temporary restraining order, this court held an informal meeting in chambers with counsel for all parties. In an order dated July 28, 1981, plaintiffs' motion for temporary restraining order was denied. That order made reference to the conflict of interest questions regarding George Skelton.

1. Section 29.04(u) of the union constitution provides that any union officer "responsible" for a failure to pay percapita taxes

    shall be subject to summary expulsion or suspension and shall not be allowed to hold office in the organization for a period of two years and the Local Union may be suspended from all privileges and benefits until such deficiency is made good.

2. At the time the decision to resume percapita payments was made, the local's officers were without sufficient percapita reporting forms to enable them to file percapita reports and payments for the months after June of 1980.

In August of 1981, only a few days before the trial, the international union appointed Dennis Leazier as *regional representative* of Local 589 in place of Skelton. Shortly *after* the trial, Skelton's rights and duties as *administrator* were similarly bestowed upon Leazier by the international president. Control of the old and new bank accounts of the local union has been transferred to Leazier. The funds in the *old* frozen account remain intact.

Dennis Leazier is now effectively in control of the local union. He presides over its meetings and supervises grievance procedures without any interference from the individual defendants or any other members of the local. However, Edgell and Nuttle still retain custody of the local union's books and records.

## II. MOTION FOR SUBSTITUTION OF PARTIES

██ Having replaced Skelton as regional representative and administrator of the local union, Dennis Leazier is now the party seeking custody of the books and records and recovery of the unpaid percapita tax. There has been a transfer of interest within the meaning of Fed.R.Civ.Proc. 25(c), and joinder of Leazier as a plaintiff is warranted. On the other hand, the advent of Mr. Leazier does not mean that Mr. Skelton may depart from this action. Skelton was the administrator when this action was filed and remained so until several days after trial. Moreover, many of the claims in the complaint, as well as several issues raised in defendants' counterclaim, turn on whether George Skelton was a proper person to be appointed administrator of Local 589. Given these considerations, the court concludes that George Skelton shall remain as a plaintiff in this action and that Dennis Leazier may be joined as a plaintiff.

## III. PLAINTIFFS' CLAIMS

██ Section 301(a) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a), provides jurisdiction in the federal district courts over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... or between any such labor organizations." In *United Association of Journeymen and Apprentices of the Plumbing Industry v. Local 334,* 454 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981), the Supreme Court held that a suit by a local union against its parent international union, alleging a violation of the international union's constitution, falls within the jurisdiction conferred by § 301(a). In this case, it would follow, § 301(a) affords jurisdiction over the international union's suit against Local 589, alleging violations of the international union's constitution.

The complaint charges defendants with the following violations of the union constitution:

1. Refusing to surrender the local union's books and records to the administrator.

2. Interfering with the collective bargaining process, grievance procedures and administration of the local union.

3. Failing to make proper financial reports to the international and members of the local union.

4. Failing to pay the percapita tax.

The substantive law applicable in breach of contract suits under 29 U.S.C. § 185(a) "is federal law, which the courts must fashion from the policy of our national labor laws." *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957). In this case, plaintiffs seek only injunctive relief to remedy the alleged violations of the union constitution. Accordingly, although this is a statutory action under § 185(a), this court is nevertheless obligated to consider whether issuance of an injunction would be warranted under traditional equitable principles. *Boys Market v. Retail Clerks Union,* 398 U.S. 235, 254, 90 S.Ct. 1583, 1594, 26 L.Ed.2d 199 (1970). In fashioning appropriate injunctive relief, therefore, this court is vested with broad equitable discretion, informed, of course, by the policies of our national labor laws.

A party coming before a court of equity must do so with clean hands. This "clean hands" maxim has been applied in 29 U.S.C. § 185(a) cases brought by an international union against an affiliated local union. *E.g., Sanders v. DeLucia,* 266 F.Supp. 852 (S.D.N.Y.), *aff'd,* 379 F.2d 550 (2d Cir.1967). In this case, the circumstances surrounding the appointment of George Skelton as regional representative and administrator of the local union provide a very forceful basis for the application of this ancient maxim.

■ The bad conduct constituting unclean hands must involve fraud, unconscionability or bad faith toward the party proceeded against, *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 997, 89 L.Ed. 1381 (1945), and must "pertain to the subject matter involved and affect the equitable relations between the litigants." *Washington Capitols Basketball Club v. Barry,* 419 F.2d 472, 478 (9th Cir.1969).

■ The international union is chargeable with unclean hands in two regards: in maintaining George Skelton in office as Local 589's regional representative with knowledge that he is a close relative of the employer's assistant plant manager and in spite of the local union's objections, and in appointing the same individual, Skelton, as administrator.

A regional representative's responsibilities regarding grievance procedures and collective bargaining require undivided loyalty to the local union membership. In this sense, he is a fiduciary. However, George Skelton's relationship to the employer's assistant plant manager tainted Skelton with an apparent, if not an actual, conflict of interest. This court will decline to permit such an apparent conflict of interest on the part of one charged with pursuing the best interests of the union members.[3] The appointment and retention of Skelton despite the protests of the local union is unconscionable and reveals bad faith on the part of the international and its regional representative, George Skelton.

Moreover, the replacement of Skelton by Dennis Leazier does not remove the taint of the prior bad conduct. The conflict of interest existed both when Skelton was appointed administrator and when he filed this action against Local 589. The same circumstances obtained at the time of the trial. Plaintiffs have never explained why Skelton was replaced, but given the close temporal proximity between the trial date and Skelton's banishment, the only reasonable inference is that he was replaced because plaintiffs themselves perceived that his apparent conflict of interest was an insurmountable obstacle to the relief they seek here. Having provoked much of the conduct of which they complain by making Skelton the regional representative and administrator of Local 589, plaintiffs cannot now avoid the unclean hands doctrine by removing the source of provocation after the case has gone to trial. *See R.H. Stearns Co. v. United States,* 291 U.S. 54, 61, 54 S.Ct. 325, 328, 78 L.Ed. 647 (1934). The taint of the international union's bad faith conduct continues to obtain and that it is shared by plaintiff Leazier because he is now serving as the primary representative of the international union in this action.

■ Ordinarily, the clean hands doctrine only applies when there is a direct nexus between the bad conduct and the activities sought to be enjoined. *See Precision Mfg. Co. v. Automotive Maintenance Machinery Co.,* 324 U.S. 806, 816, 65 S.Ct. 993, 998, 89

---

**3.** Although in Skelton's view he may not have had an especially close relationship with his son-in-law, the employer's assistant plant manager, an objective perspective would view such a relationship as a close, personal one. Given the adversarial nature of labor relations in this country, the membership of Local 589 was justified in objecting to the appointment of Skelton. Plaintiffs argue that the unclean hands doctrine would require that Skelton's conflict of interest be *actual* rather than merely *apparent.* However, this is not a case in which a fiduciary is being required to account for an actual breach of trust. The question here is simply whether the international union could require the local to accept Skelton as its administrator in the first place. The court has concluded that the national labor policies would not sustain his appointment.

L.Ed. 1381 (1945). In this case, the clean hands doctrine clearly precludes injunctive relief as to the refusal to surrender books and records and the alleged refusal to cooperate with the administrator because these challenged acts are directly attributable to the appointment of Skelton. On the other hand, the claims of improper financial reporting and nonpayment of percapita tax relate to activities that the defendants allegedly have been engaging in since well before the appointment of Skelton. However, the bad conduct of plaintiffs in this case has had a pervasive effect on the entire course of this litigation.

Although the bad conduct in question is not directly related to the financial reporting and percapita tax claims, it certainly does "affect the equitable relations between the parties in respect of something brought before the court for adjudication." *Keystone Driller Co. v. General Excavator Co.,* 290 U.S. 240, 245, 54 S.Ct. 146, 147, 78 L.Ed. 293 (1933). Moreover, in a case such as this one, which touches on "the public interest as well as the private interests of the litigants [the clean hands] doctrine assumes even wider and more significant proportions." *Precision Instrument, supra,* 324 U.S. at 815, 65 S.Ct. at 997. By its very nature, the relationship between the international union and its local affiliate is affected with a public interest, and the public policy against bad faith dealings in this context warrants denial of all the relief plaintiffs seek in this case. In light of the pervasiveness of plaintiffs' bad faith conduct, *see id.,* at 819, 65 S.Ct. at 999, this court concludes that all of plaintiffs' claims are precluded by the clean hands doctrine.

Although the unclean hands finding is sufficient of itself to preclude plaintiffs from obtaining any of the relief they seek, a consideration of the evidence pertaining to their financial reporting and percapita tax claims is warranted in order to reveal the full extent of plaintiffs' inequitable conduct.

■ Plaintiffs' first allegation of improper financial reporting concerns the treasurer's reports that were given at the local union's monthly meetings. At the beginning of her tenure as secretary/treasurer of Local 589, defendant Nuttle gave itemized reports of the local's receipts and expenditures at each monthly meeting. She subsequently resorted to a more abbreviated reporting format after learning that the members were dissatisfied with her detailed reports. Her more recent reports merely involved a summary of the previous month's beginning and ending balances and gross expenditures. During the local union meeting in February of 1981, one of the members demanded that Nuttle provide an item-by-item financial report. His demand was overruled by a majority vote of the members attending the meeting. Subsequently, in May of 1981, he was furnished with copies of some of the local union's bank statements. Plaintiffs have never cited, nor has the court discovered on its own, any provision of the international union constitution that requires monthly reports to the membership of the type demanded at the February meeting. There is no merit to the claim that the local union's monthly financial reports to the local membership were improper.

■ The only other claim of improper financial reporting concerns the information which the local union is required to furnish to the international. Section 29.04 of the union constitution requires the local union's secretary/treasurer to send the international union a monthly report of receipts and disbursements. Defendant Nuttle's practice, at least during the periods when the percapita tax was being paid, was merely to furnish the international with a monthly percapita report showing the employees on the dues checkoff list and the amount of percapita owed; she did not provide a report of the local's monthly receipts and disbursements. When she originally took office, a financial advisor from the international union had shown her how to file the percapita reports. However, Nuttle was never informed, and did not otherwise become aware, of any duty to file monthly reports of receipts and expenditures, nor did the international union ever notify her

that such reports should be filed. The evidence establishes that for a period of several years prior to the commencement of this action, the international union knowingly acquiesced in defendant Nuttle's failure to submit monthly reports of receipts and disbursements. Equity aids only the vigilant, and injunctive relief will be denied to those who slumber upon their rights. *De Vito v. Fidelity and Deposit Company of Maryland,* 361 F.2d 936, 939 (7th Cir.1966). Furthermore, there is no evidence that Karen Nuttle was aware, before this action was filed, of any duty to file itemized reports, nor is there any evidence nor even any suggestion that she would disregard this duty in the future. An injunction should not issue when all that is required is cooperation and reciprocity. *Autowest, Inc. v. Peugeot, Inc.,* 287 F.Supp. 718, 720 (E.D.N.Y.1966) (Dooling, J.). Even in the absence of the unclean hands question, this court would deny relief on the financial reporting claims. As to the unpaid percapita, it is axiomatic that an injunction shall not issue unless both irreparable injury and the absence of an adequate remedy at law are shown. Currently, defendants are unable to see to the payment of the unpaid percapita because Local 589's bank accounts have been frozen.[4] However, defendants' conduct in tendering a check for the unpaid percapita through June of 1980 evinces a willingness to meet plaintiffs' demands. Hence, it appears likely that defendants are actually unwilling to meet their percapita obligations. Under these circumstances, the asserted irreparable injury is merely speculative and injunctive relief is not warranted. *See Outboard Marine Corp. v. Liberty Mutual Insurance Co.,* 536 F.2d 730, 737 (7th Cir.1976). This conclusion is further reinforced by the international union's failure to deposit the percapita check tendered by defendants. Such a lack of diligence is inconsistent with plaintiffs' demand for the drastic remedy of an injunction.

## IV. VALIDITY OF THE "TRUSTEESHIP"

When an international union assumes control over an affiliated local union, the result is referred to as a "trusteeship" within the meaning of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. §§ 401–466. Under the LMRDA, a "trusteeship" is:

any receivership, trusteeship, or other method of supervision or control whereby a labor organization suspends the autonomy otherwise available to a subordinate body under its constitution or bylaws.

29 U.S.C. § 402(h). In this case, the international union's appointment of an administrator to govern Local 589, coupled with the ouster of the local union's duly elected officers amounts to the imposition of a trusteeship.

The establishment and operation of the trusteeship in this case has created an untenable situation for all the parties. On the one hand, the administrator is attempting to govern the local union without the support of its duly elected officers and by means of a trusteeship imbued with the international union's unclean hands. On the other hand, defendants Edgell and Nuttle continue to enjoy the support of a majority of the members of Local 589, but they are being denied any role in the administration of the collective bargaining agreement. Moreover, the local union's bank account remains frozen. The affairs of the local union are in disarray at a time when the local union and the employer are about to begin a new round of collective bargaining. It is evident that the mere denial of the relief requested by plaintiffs would not suffice to remedy this situation.

In an analogous action under 29 U.S.C. § 185(a), in which the international union's claims were denied because of unclean hands, Judge Frankel made the following observation: "If the legality of the trusteeship were up for final decision, the issue would be resolved for defendants." *Sanders v. DeLucia,* 266 F.Supp. 852, 857 (S.D.N.

---

4. The duly elected officers testified to a willingness to pay all back percapita due the international as soon as access to the frozen bank accounts is allowed.

Y.), *aff'd,* 379 F.2d 550 (2d Cir.1967). In this case, the validity of the trusteeship is properly before the court, and the court has concluded that the issue must be decided in favor of defendants.

Although this action was brought by the international union and the administrator, it is clear that the local union defendants, and not plaintiffs, are the injured parties. Along with the traditional clean hands maxim, courts of equity give effect to the principle that the chancellor suffers no right to go without a remedy. "[S]ince it is the historic purpose of equity to secure complete justice, the courts are able to adjust the remedies so as to grant the necessary relief." *Walters v. Marathon Oil Co.,* 642 F.2d 1098, 1100 (7th Cir.1981).

■ Much the same principle is expressed in Fed.R.Civ.Proc. 54(c), which provides, in pertinent part, that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." Although defendants' August 26, 1981 counterclaim sets forth a demand for dissolution of the trusteeship, consideration of the counterclaim has been stayed. Nevertheless, by virtue of Rule 54(c) and this court's inherent equitable powers, the remedy of dissolution is available, if otherwise warranted, as long as (1) the issue of the trusteeship's validity was properly raised and contested at trial, *see International Harvester Credit Corp. v. East Coast Truck,* 547 F.2d 888 (5th Cir. 1977); (2) affording such relief would not unfairly surprise plaintiffs, *see Albermarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); and (3) all the parties necessary to the granting of such relief are before the court, *Mackintosh v. Marks' Estate,* 225 F.2d 211 (5th Cir.1955), *cert. denied,* 350 U.S. 934, 76 S.Ct. 306, 100 L.Ed. 816 (1956). In addition, of course, subject matter jurisdiction must exist.

First, the validity of the trusteeship was presented and contested at trial; the validity of the trusteeship was a necessary predi-cate to the claims of interference with the administrator and refusal to surrender books and records to the administrator. Second, plaintiffs would not be unfairly surprised by the remedy of dissolution. This court indicated on the record in open court at the beginning of the trial that the remedial powers of the chancellor are broad and flexible and that the conflict-of-interest issue might well be the dispositive factor in fashioning appropriate relief. Third, all of the parties necessary to the granting of the dissolution remedy—the administrator, the international, the local and the ousted officers of the local—are before the court. Finally, jurisdiction to assess the validity of the trusteeship and to grant appropriate relief is clearly conferred by the relevant "trusteeship" provisions of the LMRDA, *see* 29 U.S.C. §§ 462 and 464.

Under the LMRDA, a trusteeship may be established:

> only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body *and* for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.

29 U.S.C. § 462. The evidence of the international union's highhanded conduct belies any notion that the trusteeship involved in this case was established for any of the purposes sanctioned by § 462. However, plaintiffs' failure to show a proper purpose for the trusteeship does not necessarily subject it to dissolution. The provision of the LMRDA which permits a local union to sue for dissolution of a trusteeship creates an initial eighteen-month *presumption* of validity for a trusteeship which can be overcome only by clear and convincing proof of one of the defenses set forth in the statute. If a trusteeship is established pursuant to the international union's constitution and

authorized or ratified by the international after a fair hearing,[5] the trusteeship

> shall not be subject to attack [for eighteen months following its creation] except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 [of Title 29]. . . .

29 U.S.C. § 464(c).

■ By the terms of § 464(c), the requirement of "good faith" obtains regardless of the "purpose" for which a trusteeship is created. Therefore, clear and convincing proof of "bad faith" is a complete defense. This interpretation of the "good faith" requirement is supported by a decision of the United States Court of Appeals for the Ninth Circuit which clearly treats bad faith as a sufficient challenge to the creation of a trusteeship. *See Hotel and Restaurant Employees v. Rollinson,* 615 F.2d 788, 793 (9th Cir.1980).

■ Moreover, § 464(c) permits a trusteeship to be challenged on the alternative grounds that it was not established *or* maintained in good faith. The use of the disjunctive "or" signifies that a trusteeship established in bad faith is void *ab initio. Cf. United Brotherhood of Carpenters and Joiners v. Brown,* 343 F.2d 872, 884 (10th Cir.1965) (trusteeship established for an improper purpose "void from its inception").

■ Applying traditional equitable principles, this court has concluded in part III above that plaintiffs have unclean hands. The finding of unclean hands clearly applies with respect to the establishment of the trusteeship; indeed, that finding is predicated upon the *bad faith* inherent in the appointment of George Skelton as adminis-

trator of the local union. The finding of bad faith with respect to the establishment of the trusteeship is supported by clear and convincing evidence. Hence, the trusteeship is invalid under 29 U.S.C. § 464(c) because defendants have shown by clear and convincing evidence that it was not established in good faith. Accordingly, the trusteeship must be dissolved, the frozen bank accounts must be disencumbered and defendants Edgell and Nuttle and other duly-elected officers must be restored to their respective offices.

Having thus afforded equity to defendants, this court will also require them to do equity; upon dissolution of the trusteeship and the release of Local 589's bank accounts, defendants must make prompt payment of the overdue percapita tax.

### JUDGMENT ORDER

Plaintiffs' September 17, 1981 motion for substitution of parties is granted in part and Dennis Leazier is hereby joined as a plaintiff in this action.

Judgment is hereby entered in favor of defendants and against plaintiffs with respect to all of plaintiffs' claims for relief other than the claim for unpaid percapita tax. It is hereby ordered, adjudged and decreed that the administratorship of defendant Local Union No. 589, Allied Industrial Workers of America established on June 29, 1981 by plaintiff International Union, Allied Industrial Workers of America, be and it is hereby set aside and dissolved. Defendants Nancy Edgell and Karen Nuttle shall be promptly restored to the offices they held within the local union immediately prior to June 29, 1981. Plaintiff Dennis Leazier shall promptly release the bank

---

5. Plaintiffs maintain that consideration of the validity of the trusteeship must be deferred until the international union's executive committee has ruled on the "fair hearing" held in September. Exhaustion of such intra-union remedies generally has not been required in cases where local union members seek dissolution of a trusteeship. E.g., *McDonald v. Oliver,* 525 F.2d 1217, 1229 (5th Cir.), *cert. denied,* 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976); *United Brotherhood of Carpenters and Joiners*

*v. Brown,* 343 F.2d 872, 881 (10th Cir.1965). Intra-union appeals in such cases are unlikely to provide relief since the protests are entertained by the very bodies that imposed the trusteeships. Moreover, in this case the local union defendants resorted to the intra-union remedy months ago, yet no ruling has been forthcoming from the international. Under the circumstances of this case, exhaustion of such intra-union remedies will not be required.

accounts of Local Union 589, Allied Industrial Workers of America of the encumbrances placed upon such accounts by the administrator of the local union on or after June 29, 1981.

Upon full compliance by plaintiffs with all of the provisions of this order, defendants shall promptly tender payment to the international union of all the percapita tax owed by Local Union 589.

Entered this 3rd day of December, 1981.