United States Court of Appeals
For the First Circuit



No. 95-1471

SERVICE EMPLOYEES INTERNATIONAL UNION, AFL-CIO, CLC,

Plaintiff, Appellee,

v.

LOCAL 1199 N.E., SEIU, AFL-CIO, CLC,

Defendant, Appellant,


APPEAL FROM THE UNITED STATES DISTRICT COURT 

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]  


Before

Stahl, Circuit Judge, 
Campbell, Senior Circuit Judge, 
and Lynch, Circuit Judge. 



Larry Engelstein with whom Jonathan P. Hiatt, Warren H. Pyle, and 
Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, were on briefs for 
appellee.
Robert M. Gault with whom Richard Mirabito, Susan M. Basham, John 
M. Creane, Michael E. Passero, Mintz, Levin, Cohn, Ferris, Glovsky and 
Popeo, P.C., and Law Firm of John M. Creane, were on briefs for 
appellant.


November 21, 1995

LYNCH, Circuit Judge. The attempted dissolution of LYNCH, Circuit Judge. 

timeless vows of fidelity between two labor organizations

gave rise to this litigation. An extremely unhappy

relationship between a local union and its International led

the Local to stop paying its monthly per capita taxes to the

International. That in turn led the International to sue the

Local in federal court in Massachusetts to collect those

taxes. When the Local replied that it had no obligation to

pay the taxes, the International claimed arbitration. The

court ordered arbitration; the arbitrator ordered the payment

of the taxes and late fees. The Local appeals from the

district court's decision confirming the arbitrator's award.

We affirm in part and vacate and remand in part.

The plaintiff International is the Service

Employees International Union, AFL-CIO, CLC ("SEIU"), a one

million member organization. The Local is District 1199, an

18,000 member union of health care employees. The Local

asserts that following a New York Times article in the Spring 

of 1991 questioning the propriety of the financial dealings

of certain International officials, it led a movement to

promote reform within the International. These efforts, it

says, were met with retribution from the International,

which, in turn, caused the Local to withhold taxes. The

International denies any wrongdoing or retribution and

attributes more common, self-interested motives to the Local.

History 

-3- 3

The International sued the Local in federal court

in Massachusetts on September 17, 1993, seeking a preliminary

injunction requiring the Local to pay per capita taxes which

it had withheld since October 1992. Six days later, in

federal court in Connecticut, certain individual members of

the Local sued both the Local itself and the International

for rescission of the contract between the two on the

grounds that the contract was entered into without fully

informing the members or receiving their authorization.

This, the Connecticut suit claimed, contravened the bylaws

and constitution governing the Local as well as the Labor-

Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C.

401, et seq.1 

The Massachusetts court denied the Local's motion

to transfer the action to Connecticut. It also denied the

International's motion for a preliminary injunction, but

granted the International's motion to compel arbitration.

The district court denied both the Local's motions to stay

proceedings and to dismiss and the International's motions to

enjoin the Local from proceeding with its cross-claim in

Connecticut and for entry of default. The district court

later denied the Local's motion to reconsider, vacate and

 

1. Motions in the Connecticut case, O'Neil et al. v. 
New England Health Care Employees Union, District 1199, and 
SEIU, No. 3:93CV1918(JAC) (D. Conn.), were under advisement 
at the time of oral argument in this case.

-4- 4

reassign for reargument the motion to compel arbitration.

The Local, however, went to arbitration voluntarily. The

parties agreed upon the six questions to be put to the

arbitrator.2 

Before arbitration commenced, on January 19, 1994,

the Executive Board of the Local unanimously voted to

terminate its contract with the International.

 

2. The Local and the International stipulated that the
six questions to be addressed by the arbitrator were:

1. Does the failure of District 1199 NE to remit to the SEIU
the monthly per capita tax, as set forth in Article 10 of the
Affiliation Agreement, constitute a violation of the
Affiliation Agreement, and if so, what shall be the remedy?

2. Does the failure of District 1199 NE to pay to the SEIU
the late penalty fee as required under Art II, Sec. 3 of the
SEIU constitution and bylaws constitute a violation of the
Affiliation Agreement, and if so, what shall be the remedy?

3. Does the failure of District 1199 NE to pay its full per
capita tax obligations to the SEIU before paying any other
bills, as required under Art XII, Sec. 4 of the SEIU
constitution and bylaws, constitute a violation of the
Affiliation Agreement, and if so, what shall be the remedy?

4. Does the failure of District 1199 NE to furnish to an
auditor designated by the International President to examine
its books and record all of its books, records, accounts,
receipts, vouchers, and financial data as requested, as
required under Art XII, Sec. 6(a) of the SEIU constitution
and bylaws, constitute a violation of the Affiliation
Agreement, and if so, what shall be the remedy?

5. Does the District have the right to terminate the 1992
Affiliation Agreement, and if so, under what circumstances?

6. Does the District's purported termination on or about
January 19, 1994, violate the 1992 Affiliation Agreement, and
if so, what shall be the remedy?

-5- 5

After seven days of hearings, the arbitrator issued

an initial decision that: (i) the Local was liable to the

International for per capita taxes; (ii) the Local did not

have the right to terminate its contract (the "Affiliation

Agreement") with the International, except through the

procedure set forth within the International's Constitution

and Bylaws, and (iii) the Local's purported disaffiliation

vote of January 19, 1994 violated the Affiliation Agreement

and was rescinded. The Arbitrator reserved decision on

various remedial issues, including payment schedule, late

fees, auditor's access to data, and priority of paying per

capita obligations, in order to give the parties a chance to

reach a negotiated resolution.

Negotiations on remedial matters failed, according

to the Local, because the International preconditioned any

compromise on the Local securing the withdrawal of the

Connecticut lawsuit. The Local argued to the arbitrator that

such preconditioning was an unlawful burden on the "right to

sue" guaranteed to union members by the LMRDA. The

arbitrator, however, refused to consider the issue, since it

related to a separate lawsuit that was not before him. On

November 9, 1994 the arbitrator awarded the International

unpaid taxes, late fees, and all other ancillary relief.3

 

3. The total amount of unpaid dues and late fees
(calculated at the rate of 2% per month, compounded), was
approximately $2,000,000 ($1,500,000 in unpaid dues and

-6- 6

Post-arbitration, the International moved to confirm the

arbitrator's award, and the Local moved to vacate it. The

district court granted the International's motion to confirm.

The Local has appealed, making three arguments.

The Local argues that the arbitrator exceeded his authority

by rescinding the vote of the Local's Executive Board and

ordering payment of the outstanding per capita taxes, saying

these remedies were not authorized by the Affiliation

Agreement. The Local also urges that confirmation of the

arbitrator's award violated public policy in that the award

undermined both the free speech rights of union members to be

critical of the International and to institute legal

proceedings against it. The Local finally argues that the

district court erred in granting the International's motion

to compel arbitration and in denying both the Local's motion

to stay proceedings and its motion to transfer the case to

Connecticut.

Confirmation of the Arbitrator's Award 

This Court reviews the district court's

confirmation of the arbitrator's award de novo as to 

questions of law and mixed questions of law and fact, and for

clear error as to questions of fact. See First Options of 

Chicago, Inc. v. Kaplan, 115 S. Ct. 1920, 1926 (1995). 

Federal court review of arbitral decisions on matters of

 

$500,000 in late fees). 

-7- 7

contract interpretation is extremely narrow and

extraordinarily deferential. See Dorado Beach Hotel Corp. v. 

Union de Trabajadores de la Industria Gastronomica Local 610, 

959 F.2d 2, 3-4 (1st Cir. 1992); El Dorado Technical Servs., 

Inc. v. Union General de Trabajadores, 961 F.2d 317, 319 (1st 

Cir. 1992) ("[A] court should uphold an award that depends on

an arbitrator's interpretation of a collective bargaining

agreement if it can find, within the four corners of the

agreement, any plausible basis for that interpretation."). 

The Local argues that this case should be treated

as a commercial contract dispute between two entities and not

as a labor dispute under 301 of the Labor Management

Relations Act, 29 U.S.C. 185. This, the Local posits,

would permit less deference to the arbitrator. Indeed, it

appears it would not. This Court in Advest, Inc. v. 

McCarthy, 914 F.2d 6 (1st Cir. 1990) explained, after 

reviewing different articulations of the standard of review

of an arbitrator's award in both labor and commercial cases,

that the different formulations were in essence "identical."

See id. at 8-9; see also Hill v. Norfolk W. Ry. Co., 814 F.2d 

1192, 1195 (7th Cir. 1987). Without deciding the larger

question, we decline in this dispute between two unions to

vary from the deferential treatment of arbitration awards

established by the Supreme Court in labor disputes under the

United Steelworkers trilogy of cases. See United 

-8- 8

Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 

596-97 (1960); United Steelworkers v. American Mfg. Co., 363 

U.S. 564, 568 (1960); United Steelworkers v. Warrior & Gulf 

Navigation Co., 363 U.S. 574, 582 (1960).  

The Local argues that the arbitrator exceeded his

authority by imposing remedies he was not authorized to

impose. It concentrates its force on the arbitrator's ruling

that the disaffiliation vote was contrary to the Affiliation

Agreement and his award rescinding the vote. It also attacks

the order that it pay the due per capita taxes and late fees

that had accrued. 

The arbitrator interpreted the Affiliation

Agreement to disallow disaffiliation except by the methods

set forth in the International's Constitution and Bylaws.4

Those methods do not include disaffiliation by a vote of a

local union's executive board. The only method of

disaffiliation allowed by the International's Constitution

and Bylaws imposes onerous requirements. The article

entitled "Dissolution" states that no local union "can

dissolve, secede or disaffiliate while there are seven (7)

dissenting members . . . ." Further, the Affiliation

Agreement is of indefinite duration. 

 

4. In the Affiliation Agreement the International
explicitly waived, for the Local, a number of the
requirements of its Constitution and Bylaws, but did not
waive the requirements of Article XXIV, the dissolution
provision. 

-9- 9

The Local argues that the arbitrator's award

contradicts the autonomy it had explicitly negotiated for in

the Affiliation Agreement. Whether or not we might have read

the contract differently, or have sympathy for the plight of

the Local that now finds itself unable to disaffiliate from

the International with whom it has, at best, a badly

strained relationship, the arbitrator's reading of the

Affiliation Agreement is plausible and we cannot disturb it.

In the face of evidence that affiliation negotiations had

been lengthy, with the Local negotiating a number of specific

protective provisions in the Affiliation Agreement (such as

bars on the power of the International to impose a

trusteeship, a merger, or a forfeiture of assets in the event

of a dissolution), it was plausible to conclude, as the

arbitrator did, that the Local bound itself to a contract of

unlimited duration that allowed only a tiny escape hatch.5 

The Local also erroneously argues that because this

case involves a contract dispute, the arbitrator was only

authorized to award damages and nothing else for breach of

contract. Specific performance is a recognized remedy for a

 

5. The Local also points to cases mentioning
"autonomy" as a factor in determining a local union's right
to terminate its affiliation agreement. Those cases,
however, turn, as does this one, on the terms of the local
union's agreement with the international. See, e.g., Local 
No. 1, Amalgamated Lithographers v. Brown, 270 N.Y.S.2d 891, 
896 (N.Y. App. Div. 1966), aff'd, 286 N.Y.S.2d 853 (N.Y. 
1967); Sanders v. De Lucia, 266 F. Supp. 852, 856 (S.D.N.Y. 
1967), aff'd, 379 F.2d 550 (2d Cir. 1967).  

-10- 10

breach of contract, and because that remedy was not expressly

precluded by the Affiliation Agreement, it was plausible for

the arbitrator to award it. "[S]ubject to the terms of the

empowering clause, arbitrators possess latitude in crafting

remedies as wide as that which they possess in deciding

cases." Advest, 914 F.2d at 10-11.  

The Local argues that the arbitrator's award

exceeded his authority in that requiring a payment of the per

capita taxes plus a penalty was not among the specific

remedies listed in the International's Constitution and

Bylaws for non-payment of dues. The remedies explicitly

listed are suspension of the local union, revocation of the

local union's charter, and appointment of a trustee. The

arbitrator, however, plausibly rejected an interpretation

that these were exclusive remedies. The relevant section of

the International's Constitution and Bylaws does not limit

the International's remedies to the three enumerated.

Rather, the relevant clause refers the matter of non-payment

of dues to the International President for such action as he

shall deem appropriate, "including without limitation" the 

three actions specifically listed (emphasis added).

Alleged Violations of Public Policy 

The Local argues that the arbitrator's award must

be set aside in any event because it is contrary to public

policy that is explicit, well-defined and dominant. See, 

-11- 11

e.g., W.R. Grace & Co. v. Local Union 759, Int'l Union of the 

United Rubber, Cork, Linoleum & Plastic Workers of Am., 461 

U.S. 757, 766 (1983). That policy, it says, is contained in

the LMRDA, 101(a)(2),(4), and the protections it

guarantees to union members to be able to express freely

their views and opinions, and to institute proceedings in

court or in front of an administrative agency. W h e n a

violation of well-defined and dominant public policy is

asserted, the question is ultimately one for resolution by

the courts, and a court is required to make its own

independent evaluation. See id. 

The Local makes two very precise arguments.6

First, it says, the award condones violation of free speech

rights in ignoring that the International "repeatedly and

systematically retaliated against the District for engaging

in union democracy activities." As an example, the Local

points to the fact that the International President, John

Sweeney, did not include the Local's representative on his

slate of candidates for election to the executive board of

the International (which would, according to the Local, have

 

6. For the first time on appeal, the Local also argues
that the arbitrator's reading of the Affiliation Agreement's
preconditions to disaffiliation violates public policy. It
is settled that "absent the most extraordinary circumstances,
legal theories not raised squarely in the lower court cannot
be broached for the first time on appeal." Teamsters, 
Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. 
Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992). 

-12- 12

guaranteed the election of its candidate). The Local cites

in support of its argument cases involving situations in

which the union officials whose rights under the LMRDA were

endangered had won elections and were being removed or 

suspended during their terms. See Maceira v. Pagan, 649 F.2d 

8, 10-11 (1st Cir. 1981); Bradford v. Textile Workers, 563 

F.2d 1138, 1139-40 (4th Cir. 1977). Although a plausible

argument might be made for extending those cases beyond their

facts, the arbitrator found as a matter of fact that no

promise to slate the Local's candidate for the

International's board elections had been made as a part of

the Affiliation Agreement, and that refusal to do so was not

in retaliation for the Local's "union democracy" activities.

We may not second guess the factual findings of the

arbitrator. See Paperworkers Int'l Union v. Misco, Inc., 484 

U.S. 29 (1987). In Misco, the Supreme Court counselled that 

it is "the arbitrator's view of the facts . . . that [the

parties have] agreed to accept" and that "[c]ourts thus do

not sit to hear claims of factual . . . error by an

arbitrator as an appellate court does in reviewing decisions

of lower courts." Id. at 37-38. The factual predicate for 

the Local's argument was explicitly found wanting by the

arbitrator. Absent such a factual predicate, we may not

reach the legal claims.

-13- 13

The Local next argues that the arbitrator's award

violates LMRDA 101(a)(4), which provides as follows:

Protection of right to sue.--No labor
organization shall limit the right of any
member thereof to institute an action in
any court, or in a proceeding before any
administrative agency, irrespective of
whether or not the labor organization or
its officers are named as defendants or
respondents in such action or proceeding 
. . .

29 U.S.C. 411(a)(4).

During the negotiations mandated by the arbitrator,

the International, according to the Local, refused to

negotiate over a reduction in or a reasonable repayment

schedule for the per capita taxes or a waiver of the late

fees, unless the Local arranged for the withdrawal of the

O'Neil lawsuit that its members had brought in Connecticut. 

The Local argues that the International, by conditioning

negotiations on the Local securing the withdrawal of its

members' lawsuit, violated the "right to sue" guaranteed to

union members by LMRDA 101(a)(4).

The arbitrator refused to consider the issue of

whether the International had violated the "right to sue" of

the Local's members. He said that the O'Neil lawsuit was not 

before him. The legal question, however, has nothing to do

with the O'Neil litigation itself. Instead, the issue is 

whether the International, in refusing to do other than

extract its maximum recovery unless the Local secured the

-14- 14

withdrawal of its members' lawsuit, violated the members'

"right to sue."7 Two distinct issues are presented:

payment of the per capita taxes and payment of the late fee. 

The per capita taxes paid by the local unions are

the means by which the International funds its existence.

The Local makes no claim that the per capita taxes are

usually waived, reduced, or rescheduled. Since the per

capita taxes are payments that the International expects to

collect in full as a matter of course, the failure to

 

7. There is clear evidence in the form of
correspondence between the International and the Local
showing the International's unwillingness to waive or reduce
the payments owed, unless the O'Neil lawsuit was withdrawn. 
The arbitrator, however, made no findings on whether this was
so and on the issue of whether conditioning negotiations on
the Local securing withdrawal of a member's lawsuit
constitutedan interference with a member's "right to sue." 
In addition, an issue mentioned in passing, but not
squarely argued by the International, is whether this Court
may consider the evidence of the International's conduct
during settlement negotiations. But issues not squarely
raised by the parties are waived. See Grella v. Salem Five 
Cent Savings Bank, 42 F.3d 26, 36 (1st Cir. 1994) (argument 
raised by way of "cursory footnote" deemed waived). There is
much law, in any event, to support admissibility. See NLRB 
v. Gotham Indus., Inc., 406 F.2d 1306, 1313 (1st Cir. 1969) 
(statements made during the course of a labor negotiation
that are the basis for a charge of unfair labor practices are
admissible on the trial of that issue); see also Urico v. 
Parnell Oil Co., 708 F.2d 852, 854 (1st Cir. 1983) (evidence 
of settlement negotiations is admissible to show that a
wrongful refusal to make a reasonable settlement offer
prevented the plaintiffs from being able to mitigate
damages); Overseas Motors, Inc. v. Import Motors Ltd., 375 
F.Supp. 499, 537 (E.D. Mich. 1974)("[I]t would also seem
reasonable to admit such evidence where the settlement
negotiations are themselves subjects of the lawsuit--i.e.,
operative facts"), aff'd, 519 F.2d 119 (6th Cir.), cert. 
denied, 423 U.S. 987 (1975).  

-15- 15

negotiate over reducing or rescheduling them cannot on these

facts be said to be a "penalty" on the "right to sue." 

The late fee is a different matter. The 2% a month

late fee is at a rate many states consider usurious8. When

compounded monthly, the annual rate works out to 26.82% a

year and adds up here to $500,000 -- approximately a third of

the actual principal payment. Further, the evidence is that

late fees are routinely waived by the International, and even

when assessed, the fees are typically small.9 In the

context of the high rate charged and the routine waiver of

late fees in other cases, conditioning a waiver on the Local

securing withdrawal of its members' lawsuit may be a

deterrent to members suing. "If a union member's right to

sue is to have any meaning, courts must be ever vigilant in

protecting that right against indirect and subtle devices as

well as against direct and obvious limitations." Phillips v. 

International Ass'n of Bridge Workers, Local 118, 556 F.2d 

939, 942 (9th Cir. 1977); see also Moore v. Local 569 of 

 

8. For example, the rate above which interest charges
constitute usury in Massachusetts is 20%. See Mass. Gen. L. 
ch. 271, 49; Begelfer v. Najarian, 381 Mass. 177, 182 
(1980); see also Eric A. Posner, Contract Law in the Welfare 
State: A Defense of the Unconscionability Doctrine, Usury 
Laws, and Related Limitations on the Freedom To Contract, 24 
J. Legal Stud. 283, 313 (1995) (presenting a short history of
the development of usury laws). 

9. Evidence pointed to by the International itself, to
show how it regularly assesses and collects late fees, shows
that other than in this case, all the late fees it has
assessed have been for amounts lower than $1,000. 

-16- 16

Int'l. Bhd. of Elec. Workers, 53 F.3d 1054, 1056 (9th Cir. 

1995) ("The employee bill of rights protection is worded in

the most inclusive terms, which are clearly intended to

preclude restraints upon members' rights to seek relief from

courts and agencies."), petition for cert. filed, 64 U.S.L.W. 

3271 (Sep. 20, 1995). If enforcement of the late fee portion

of the arbitrator's award was in retaliation for the filing

of the O'Neil lawsuit, that would arguably violate  

101(a)(4)'s prohibition against a union obstructing the right

of its members to sue. The arbitrator failed to conduct any

factfinding on this issue. Hence we vacate the award of late

fees and remand this issue to the district court to send back

to the arbitrator for factfinding and decision. See Labor 

Relations Div. of Constr. Industries v. International Bhd of 

Teamsters, Local No. 379, 29 F.3d 742, 749 (1st Cir. 1994) 

(case involving fact-intensive factor balancing remanded to

district court with instructions that it be remanded to the

arbitrator for initial determination).

The International argues that there was no penalty

on the members' right to sue because in this case, the late

fees were imposed before the O'Neil suit was brought. The 

International's distinction, however, is evanescent. It is

not the imposition of the late fees that is at issue, but the

subsequent refusal to grant a waiver of those late fees as 

-17- 17

the International usually has done, unless the suit was

withdrawn.10 Rulings on Motions 

The Local argues that the district court erred in

granting the International's motion to compel arbitration and

in not granting both the Local's motion to have the case

transferred to Connecticut for consolidation with the O'Neil 

case and its motion to stay the Massachusetts action. 

There was no error in compelling the Local to

arbitration. To the extent that the Local is arguing that

there was no need to order it to arbitration as it would go

voluntarily, the district court could reasonably think an

order necessary in light of the motion to enjoin arbitration

filed by the Local in the Connecticut action. 

The district court's rulings on the motions to

transfer and stay are reviewed for an abuse of discretion.

See Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st 

 

10. The International also argues that 101(a)(4)
protects the rights of "members" to sue, and that that right
does not extend to the Local as an organization. The Local,
however, is not asserting its own right to sue, but that of
its members. The Local appears to meet the three-pronged
test for associational standing set out in Hunt v. Washington 
State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977). See 
International Union, United Automobile, Aerospace & 
Agricultural Implement Workers v. Brock, 477 U.S. 274, 282 
(1986) (holding that union has standing to assert rights of
members where Hunt test is satisfied); United States v. Local 
560 (I.B.T.), 974 F.2d 315, 339-42 (3d Cir. 1992)(applying 
the test of organizational standing to sue to the case of a
Local asserting the rights of its members under the LMRDA);
see also American Postal Workers Union v. M. Frank, 968 F.2d 
1373, 1375 (1st Cir. 1992);

-18- 18

Cir. 1987); Chrysler Credit Corp. v. Marino, 63 F.3d 574, 578 

(7th Cir. 1995). The district court did not abuse its

discretion in denying the Local's motions to transfer the

action or to stay it. The Massachusetts suit dealt with the

distinct issue of the parties' conduct under the Affiliation

Agreement. The Connecticut action dealt with the separate

issue of whether the Local's members needed to have ratified

the Affiliation Agreement. In the interests of dealing with

matters before it in a timely manner, the district court

denied the stay, and was well within its bounds in doing so.

Accordingly, the late fee portion of the award is 

vacated and remanded to the district court to be remanded to 

the arbitrator. The district court's judgment is affirmed in 

all other respects. The International's motion for sanctions 

against the Local, for filing a frivolous appeal, is denied. 

No costs are awarded.  

-19- 19